TILTON, GREGORY & RICHARDSON v. J. & A. J. MILLER & CO., *Principal Debtors, and* X. C. STEVENS, *Trustee, and* ALEXANDER MILLER, R. P. HAWLEY, JOHN GILFILLAN 2nd, AND ALEX'R MCLEOD MILLER, *Claimants.*

### *Trustee Process.*

The claimant, having demands against, and being liable as sureties for, the defendants, took from the latter an assignment of their stock of goods as security and indemnity for such demands and liabilities, and went with a deputy sheriff and put him in posession of the goods under the assignment. Afterwards, fearing that they might not be fully protected by such a proceeding, but not intending to abandon their rights under such assignment, they caused writs to be made in their favor against the principal debtor, and to be served by the same deputy, by attaching the property so assigned. These suits were regularly prosecuted to judgment, and executions issued thereon and placed in the deputy's hands. He sold the goods, but in their sale did not proceed as required by law in the case of sale on execution. Afterwards the deputy was summoned as trustee of the defendants. *Held,* that he was not chargeable as trustee to the extent of the actual demands of the claimants against, and their liability for, the defendants and the expenses of such sale.

TRUSTEE PROCESS.—The facts in the case sufficiently appear in the opinion of the court. The cause was tried by the court upon the commissioner's report, at the June Term, 1861, in Caledonia County, POLAND, CH. J., presiding, and the court adjudged that the trustee was not chargeable, and that the claimants were entitled to the funds in the trustee's hands to the extent of the executions in their favor held by the trustee.

To this decision the plaintiffs excepted.

*Leslie & Rogers,* for the plaintiffs.

—————————, for the claimants.

PIERPOINT, J. The claimants in this case base their right to the funds in the hands of the trustee : 1st, upon the transfer of the property, out of which the fund was raised by the principal debtor, to them prior to its going into the hands of the trustee ; 2d, upon their attachment.

From the report of the commissioner, it appears that on the

Tilton, Gregory & Richardson *v.* Miller and Co., et al.

14th of October, 1855, James Miller, one of the principal debt-ors, in consideration that Alexander Miller and John Gilfillan 2nd, (two of the claimants,) would then, and at future times, advance him money with which to purchase goods, agreed with them in writing, that they should have a lien upon all the goods he might afterwards have in his store, as security, and that the goods should be their property, with the right to take them at any time in payment, at cost, with reasonable deductions, &c. ; that in pursuance of said arrangement, Miller and Gilfillan did then, and at subsequent times, advance to him large sums of money, and also became liable for him, as sureties upon notes for other sums ; that, becoming alarmed as to their safety in the matter, they resolved to take measures to make their security available, and, after advising with their counsel, took from the principal debtor an absolute transfer of all the goods in the store, and other personal property, to secure and indemnify them for said debts and liabilities, and thereupon immediately dis-patched their attorney, Mr. Potts, to West Barnet, the place of business of the principal debtor, to take the necessary steps to protect their interests. Potts took with him the trustee, Stevens, who was a deputy sheriff. On their arrival, Potts took posses-sion of the store, delivered the key to the trustee, and directed him to take possession of the store and the charge of the goods, and permit no one to meddle with them, which directions he fol-lowed. Potts having doubts about the claimants' ability to pro-tect themselves under their bill of sale, it was decided, on con-sultation between the claimants, Miller and Potts, to have writs made in favor of all the claimants in this case, (they all having claims against the principal debtor, or being liable for him as sure-ties,) and to attach the goods in the store thereon. Writs were accordingly made, and put into the hands of the trustee, Stevens, as deputy sheriff, and he attached the goods, made an inventory thereof, and made return on the writs in due form, and the suits were duly entered in court, at the term to which they were made returnable.

Immediately upon the making of these attachments, the claim-ants and the principal debtors agreed, in writing, that the trus-tee, Stevens, should proceed forthwith to sell the goods, which he

38

did as soon as the inventory was made,—selling, sometimes at private sale, and sometimes at auction.   He put up a notice of sale as a sheriff's sale, but did not give a formal notice of fourteen days.   The whole was sold in about one month, and the proceeds amounted to $1,936 32, which is the sum now in controversy.

It also appears from the report, that long before the service of the trustee process in this case, the trustee had paid of the aforesaid sum, to the claimants, or on demands against the principal debtor,.whereon the claimants were liable as his sureties, and for expenses in doing the business, the sum of $1,389 24.   This was paid with the assent and under the direction of the claimants and the principal debtor.

It is difficult to see upon what ground it can be claimed that Stevens should be made chargeable with this sum as the trustee of the debtor.   He did not have it in his hands when the process was served, but had paid it out under the direction of the only persons who had any interest in it, or any control over it.   It is very clear that he cannot be made liable for that amount in this suit.

As to the balance in his hands, the question arises, who is entitled to that ?   It is said the claimants lost their lien upon the property under the transfer from the debtor, when they attached it upon their demands ; that such act operated as an abandonment of their rights under it, and that now they must rely solely upon such rights as they acquired, and have preserved by virtue of their attachments.   From a careful consideration of all the facts reported by the commissioner, we do not come to that conclusion.   It is obvious that when Potts, as the attorney of Alexander Miller and Gilfillan, took possession of the property and put it into the possession of Stevens, the trustee, he did it under, and by virtue of, the authority conferred by the bill of sale, and that the attachments were resorted to in aid of that authority, they, probably, thinking that if the property was also attached, other creditors of the debtor would be less likely to interfere. They evidently had no intention of abandoning their rights under that agreement, nor did they suppose such would be the legal effect of the attachments.

The course subsequently pursued in the disposition of the

property by Stevens under the written agreement, is consistent with this view, and is utterly at variance with the idea that he was acting solely under the authority of the attachments, and although the commissioner has, "from all the circumstances," expressed a "*belief*" that he did so act, still he has not found the fact to be so ; and we think from all the circumstances he would hardly have been warranted in so doing. As deputy sheriff, he had no authority to pursue the course he did in disposing of the property. He could justify himself only on the ground that he was acting as the agent of the parties, deriving his authority directly from them, and even if he had supposed he was acting as a public officer, that would not, under the circumstances of this case, have affected the rights of the claimants to the funds in his hands.

The attachment did not discharge the parties' prior lien on the property by operation of law—they could pursue both remedies at the same time if they chose—the transfer of the property to 'the claimants did not discharge their claims against the debtor, as by the terms of the writing the transfer was made to them as "security and indemnity." It might, with the same propriety, be claimed that, to bring a suit upon a note secured by a mortgage on real estate, and to attach the mortgaged property thereon, would discharge the mortgage, as to claim that in this case the attachment operated as a discharge of the parties' lien.

We are satisfied from the whole case that the claim of Alexander Miller and John Gilfillan 2d, under their assignment of the property, is a valid and subsisting claim, and entitles them to the proceeds of the property in the hands of the trustee to the amount of their debts against, and liability for, the principal debtor, and as the report shows that they are also holden on the same demands with the other claimants, for a sum sufficient to make their demand against the principal debtor much larger than the amount received by the trustee from the sale of the goods, they are entitled to the balance remaining in the hands of the trustee, after deducting from the whole sum received, the sum of $1,389 24, being the amount paid out by him by direction of the parties as before stated.

As the judgment of the county court was in favor of the claim-

ants only to the amount of their judgments, which are less than the sum received by the trustee, and less than their whole debts, and the trustee was discharged on grounds which, under the view that we have taken of the case, it becomes unnecessary now to consider ; and as the claimants have not taken exceptions to the decision of the county court, as the case stands, all we can now do is to affirm the judgment of the county court.

Judgment affirmed.