## BRIGHAM *v.* AVERY AND BELKNAP.

*Attachment of Lessor's Interest in Personal Property in Possession of the Lessee. Construction of Chattel Mortgage.*

Personal property in possession of the lessee, cannot be attached as the property of the lessor, only in the manner provided by statute; it cannot be taken from the lessee's possession.

A and B were joint owners of a farm, and of the stock and farming tools thereon. B sold and conveyed his half thereof to A, who at the same time mortgaged it all back to B, to secure the purchase money, evidenced by five 800-dollar notes, payable yearly with interest annually. The mortgage provided that B "is to have and retain a first lien upon all the crops of every kind that grow upon the said farm, until the sum of eight hundred and interest is paid by me toward the farm and personal property; but said lien is not to be enforced in any way until after the said eight hundred dollars is due and unpaid: and provided further, that when the said sum of eight hundred dollars and interest is paid, the said B is to release all security upon the live stock before described; and when the further sum of two hundred dollars is paid, the said B is to release all security upon all the tools before described upon the said farm—meaning that the payment of said sums of eight hundred and two hundred dollars, is to operate as a release of the said live stock and tools." *Held*, that the construction of said mortgage was, that when the first $800 of said purchase money, and the interest *thereon*, were paid, the lien on said live stock was discharged.

TRESPASS for a lot of live stock, farming tools, &c. Plea, the general issue, and notice of justification under process, and under a mortgage of said property hereinafter mentioned. Trial by the court, December Term, 1875, POWERS, J., presiding.

The plaintiff proved the taking of the property declared for. He also gave in evidence a lease between himself of the one part, and Perley Belknap and the defendant Daniel Belknap of the other part, dated March 12, 1872, and proved that he went into possession of the farm and property therein described, at the commencement of the term thereby created, and that said lease had been verbally renewed from year to year, and every year, until the present time, during all which time he had been in possession of said farm and property as lessee thereof. Said lease was a letting at the halves of a farm, and of the live stock, farming tools, &c., thereon, for one year.

It appeared that the said Daniel Belknap, on March 16, 1872, by his deed of that date, conveyed his undivided half of said farm and property to his co-tenant, the said Perley, and that at the same time the said Perley executed back a mortgage of the same property, to secure the purchase money thereof. The premises of the deed, after describing said farm, contained the following :

Also, an undivided half of sixteen cows, of one pair of oxen, of three heifers, two years old, of three yearling heifers, of one two-year old bull, of two hogs, and the avails of one gray mare sold ; also, an undivided half of one mowing machine, of one ox cart, of one two-horse wagon, of one horse rake, of one brass clock, and an undivided half of all other farming tools, sugaring tools, mechanic's tools, and dairy tools ; meaning to convey an undivided half of all the stock and tools now being upon, or belonging to, the said farm, and owned heretofore by the said Daniel Belknap and Perley Belknap as tenants in common.

The premises of said mortgage, after describing said farm, contained the following :

Also, the whole of the personal property specified in said warranty deed (one undivided half sold to me by said Daniel Belknap) ; also, the said Daniel Belknap is to have and retain a first lien upon all the crops of every kind that grow upon the said farm, until the sum of eight hundred and interest is paid by me towards the farm and personal property ; but said lien is not to be enforced in any way until after the said eight hundred dollars is due and unpaid ; and provided further, that when the said sum of eight hundred dollars and interest is paid, the said Daniel Belknap is to release all security upon the live stock be-

fore described; and when the further sum of two hundred dollars is paid, the said Daniel is to release all security upon all the tools before described, upon the said farm—meaning, that the payment of said sums of eight hundred and two hundred dollars, is to operate as a release of the said live stock and tools.

Said mortgage was conditioned for the payment of the said Perley's five promissory notes for $800 each, the first of which was payable on April 1, 1873, and the others yearly thereafter, with interest annually.

After the said Perley became the sole owner of said farm and property as aforesaid, said lease was renewed as aforesaid, and expressed and evidenced the terms of the contract under which the plaintiff continued to occupy and carry on said farm from year to year as aforesaid, under the said Perley.

The defendants introduced a certified copy of the proceedings and judgment in a cause wherein the said Daniel Belknap was plaintiff and the said Perley was defendant, which was received subject to all legal objections; and proved that the defendant Avery, as deputy sheriff of Washington County, took the property in question from the plaintiff's possession, by virtue of the original writ in said cause, as the property of the said Perley; and the said Avery testified that he intended to and did. return all the property thus taken, as attached upon said writ •

It appeared that the 800-dollar no e mentioned in the condition of said mortgage, due April 1, 1873, was for the first $800 of the purchase money of said farm and property, and that the same, with the interest thereon, was paid and taken up by the said Perley within a day or two after it became due. Neither of the defendants testified, nor did they give any evidence tending to show, that said property, or any part thereof, was in fact taken, or claimed or attempted to be taken, by virtue of any lien that the said Daniel had, or claimed to have, thereon by reason of said mortgage; but said property was in fact taken by virtue of said writ, and has always been treated by the defendants as so taken.

It appeared that said Avery, on May 23, 1874, removed a portion of the inanimate property in question, from the plaintiff's possession, and that on the 9th of June following, he removed the

remainder of said inanimate property, and all of the live stock, from the plaintiff's possession, and proceeded to sell the same on the writ under the statute, and did thus sell all of the live stock at public auction on the 25th of said June, as deputy sheriff as aforesaid.

The plaintiff gave evidence tending to show, and there was no evidence to the contrary, that the three yearlings, eight calves, and one hog that the defendants took, were raised on the farm from the stock thereon, since there had been any settlement be-tween the plaintiff and the said Perley as to the increase of said stock, and since the execution of the said Daniel's mortgage ; wherefore the plaintiff claimed, among other things, that he was the absolute owner of one undivided half thereof. The plaintiff also gave evidence tending to show that he had made over the ox sled pretty much new since any settlement between him and said Perley, and since the execution of said mortgage—and therefore claimed an absolute interest therein.

On trial the defendants claimed to justify under process in said suit of *Daniel Belknap* v. *Perley Belknap*, and also upon the ground that the said Daniel Belknap had a lien upon the property taken, by virtue of said mortgage, and therefore had a right to take it in the manner it was taken. The plaintiff claimed, among other things, that said live stock was released from said mortgage by the payment of said 800-dollar note and the interest thereon ; that there was no testimony tending to show that the defendants professed or intended to act under and by virtue of said mortgage in taking said property, or any part thereof, and if they did, having elected to treat it as attached, they must stand upon their justifi-cation under process ; and that they could not so stand, because they had no right to invade the plaintiff's possession of said prop-erty by virtue of process against his lessor. Other questions were raised by the plaintiff, but as they were not considered by the Su-preme Court, they are not stated.

The court held that under the lien shown by the mortgage, in-asmuch as plaintiff had actual notice of its existence, the defend-ants could justify the taking of the property, even though the pro-ceedings under the attachment were irregular ; and rendered judg-

ment for the defendants to recover their costs. Exceptions by plaintiff.

*Geo. M. Fisk* and *J. W. Rowell*, for plaintiff.

The defendants cannot stand upon their justification under process. Prior to the passage of No. 8 of the Acts of 1858 (Gen. Sts. p. 293, ss. 31, 32), property leased and in possession of the lessee, could not, during the term, be attached at all (unless by trustee process) as the property of the lessor, because it could not rightfully be taken from the lessee's possession, without which no valid attachment thereof could be made. *Smith* v. *Niles*, 20 Vt. 315. Since the passage of that statute, the interest of the lessor in such property can be attached only in the mode thereby provided, or by trustee process. The invasion of the leesee's possession by taking the property therefrom in the manner the defendants did in this case, is as much a trespass as it would have been before the passage of that statute.

The live stock was released by the payment of the first eight hundred dollar note named in the mortgage, and the interest thereon. Such is the fair construction of the mortgage.

*F. Plumley* and *C. W. Clarke*, for defendants.

The payment of $800 and interest *thereon*, does not discharge the lien upon the stock, and is not the payment of $800 and interest, as specified in said mortgage.

The suit was in trespass *de bonis*, to recover for certain goods and chattels in which the plaintiff claimed a special property by way of a lease from P. Belknap to him, made in the spring of 1874. Five notes were given, each for $800, and all with interest annually,—the interest on all and the first $800 falling due at the same time.

The defendants had a right as against Brigham, to attach the property on which was the lien, and reduce to possession said property in that way, and in so doing are not estopped from setting up the lien in defense when sued by the plaintiff. Plaintiff cannot complain because defendant Belknap saw fit to proceed by attachment, since plaintiff has not in any manner been defrauded

thereby. He claims to hold by virtue of a lease made prior to the attachment and not subsequent. He claims by no rights acquired since the attachment. If the defendant Belknap had a right to take said property, he had a right, so far as Brigham is concerned, to take it in any manner he chose, peaceably; and when sued by Brigham, defendants have a right to any defense which sustains that right, and this under the general issue. *Hicks* v. *Cram*, 17 Vt 449; *Child* v. *Allen*, 33 Vt. 476.

Hence we say the clear, fair, and legal interpretation of the contract in said mortgage is, when $800 of the principal is paid, then the stock and the crops shall be released. But the payment of $800 and interest *thereon*, would not be a reduction of the debt $800, since at the same time there fell due on the other notes $192 of interest, which must first be paid. Acts of 1866, No. 61, p 67; *Lowry* v. *Adams*, 22 Vt. 160. The last clause of the mortgage, to wit, "meaning that the payment of $800 and $200 is to operate as a release of said live stock and tools," shows conclusively that the payment referred to was not of interest, but of the debt as it then existed : and the interest mentioned was on the whole debt, and not on the $800 only.

The opinion of the court was delivered by

Ross, J. The right to take property by attachment on mesne process is given by statute. It did not exist at common law. To justify such taking, the provisions of the statute giving the right, must be complied with. Until the statute conferred the right upon a creditor to attach the reversionary interest of a lessor in personal property in the possession of the lessee, no valid attachment thereof could be made. *Smith* v. *Niles*, 20 Vt. 315. Now that the statute (Gen. Sts. c. 33, ss. 31, 32,) has conferred the right of attaching such property, to create a valid attachment, the creditor must pursue the provisions of the statute. He cannot, where the lease is valid, justify the removal of the property from the possession of the lessee. By the lease, the lessee has acquired the right to such possession. That right has passed from the lessor by the terms of the lease. The creditor can only acquire by attachment of property leased, the right thereto which

remained in the lessor at the time of the attachment. Inasmuch as it is found that the defendants, in attaching the property in suit, did not pursue the provisions of the statute, but went beyond, and invaded the rights of the plaintiff as lessee, they cannot justify that taking of the property under the writ. This is so, if the issue of the stock leased is held to have the same legal relations to the lessor and lessee that the original leased stock had. Hence, the determination of how that fact may be, is immaterial.

The defendants not being able, on the facts found, to justify the taking of the property by reason of the attachment thereof, the question arises whether the defendant Belknap had such a lien on the property taken that he can justify the taking thereof under the deeds of March 16, 1872. The decision of this question involves the construction of the language used in the mortgage deed, when applied to the subject-matter of said deed so far as it relates to such lien. The defendant Belknap conveyed by deed to the lessor an undivided half of the farm, and an undivided half of part of the personal property leased to the plaintiff. All of the personal property taken by the defendants from the plaintiff, was the personal property, the undivided half of which was so conveyed, or the issue of such property. The lessor, on the same day, reconveyed to defendant Belknap, by a mortgage deed, the same undivided half of the farm and personal property, as security for the payment of the purchase money. In the description of the property conveyed by the mortgage, is enumerated the personal property conveyed by the deed to the lessor, with the condition, or provision, that when the lessor shall pay $800 and interest, the defendant Belknap shall release his lien on the live stock, and that the payment of that sum shall operate as a release of the live stock. The whole purchase money was divided into notes of $800 each, one of which matured yearly. All of the notes were secured by the mortgage. It is found that before the defendants took the property in suit, the lessor had paid the $800 note first falling due, and the interest thereon, and the defendant Belknap surrendered the same. It is now contended that by *interest*, used in connection with the payment of $800, is meant the interest on the whole purchase money, and

Brigham *v.* Avery et al.

that the defendants' lien on the live stock was not discharged when the note of $800 and the interest on it were paid. In the description of the property where this condition is found, no mention is made of any other sum than the $800 and the $200 that was to be paid for the release of the lien on the remaining personal property. We think the natural import of the words $800 *and interest,* in the connection in which they are used, is, $800 and the interest on that sum. Any other construction of this language appears to us to be forced and unnatural. Besides, the defendant Belknap has practically so construed it; when the first note for $800 became due, he received that sum and the interest on it, and gave up the note. To be consistent with his claim as now made, he should have applied the sum then paid by the lessor, first, to extinguish the interest on all the notes, and have left a portion of the first note unpaid. We think, by the receipt of the amount due on the note first falling due, he discharged his lien on the live stock, according to the true intent and meaning of the condition relating thereto in the descriptive portion of the mortgage deed. The County Court held that the lien reserved to the defendant Belknap on the live stock, was not discharged by the payment of the $800 and interest on it. This we hold was error, and for this reason the judgment of the County Court must be reversed. This construction of the condition in the mortgage deed, makes it unnecessary to consider several other questions raised by the plaintiff on the facts found by the County Court. The County Court having, as this court holds, proceeded upon an erroneous view of the law, did not find the value of the live stock, or of any of the property taken by the defendants; hence the case must be remanded for further trial in the County Court.

Judgment reversed, and cause remanded.