## THE COLLENDER CO. *v.* A. J. MARSHALL.

*Conditional Sale.    Lease.    Insolvency.    Assignee.    Contract,*
*Where made.*

1. Property, sold conditionally and delivered, without a legal record of the lien, passes to the assignee of the vendee under the insolvent law.
2. A contract, by which a vendee of billiard tables agrees to pay in monthly installments in one year the entire value of the tables, and if he so paid the property was to be his, and if not, the vendor's, is a conditional sale, and not a lease.
3. When one here orders goods from a party in New York on certain terms as to payment, &c., but they are shipped, consigned to the vendor, and accepted on different terms; *Held*, that the contract was made in this State.

REPLEVIN for two billiard tables. Trial by court, June Term, 1883, Addison County, VEAZEY, J., presiding. Judgment for the defendant.

The plaintiff—a corporation—is located in New York city. On the 16th day of December, 1881, H. A. Rowe, at Troy, N. Y., ordered the tables in question by two written orders. The writing put in as evidence by the plaintiff, and claimed to be a lease and contract to sell, was in part as follows: * * * * "That the said party of the first part hath let, and by these presents doth let, unto the said H. A. Rowe, the party of the second part, one maple 41–2x9 carom bevel billiard table, one maple 41–2x9 pocket billiard table, one set 23–8 ivory billiard balls, * * * * for the term of

twelve months from date, and for the sum of five hundred and twenty-five dollars, to be paid in the following manner; namely, $100 in cash, and the balance in eleven payments, * * * * that if the said party of the second part shall well and truly keep the covenants herein made, and shall make no default in the payment of the aforesaid installments, as the same shall become due and payable, and this lease shall not be determined by mutual consent sooner or otherwise, that they, the said party of the first part, will make, execute, and deliver to the said party of the second part a good and sufficient bill of sale for said billiard table, the consideration whereof shall be the amount of the above-named payments received for the said term, in all the sum of five hundred and twenty-five dollars."

This writing, held by the court to be a conditional sale, was dated January 4, 1882, and provided that, if there was default in payment of the installments, the plaintiff could take possession of the tables and hold them as though no writing had been made. The writing was executed by the plaintiff in New York, and by Rowe in Middlebury, Vt. Rowe was adjudged an insolvent debtor July 31, 1882; and the defendant was assignee of his estate. When the defendant was appointed assignee he took possession of the tables; but it appeared that neither he nor the creditors knew of the plaintiff's claim. The writing was never recorded. The exceptions stated:

"Said Rowe also testified, that the contract for the tables was made in Troy, N. Y., and the lease was to be sent to him at Middlebury, Vt., when prepared, for his signature; that he paid twenty dollars at the time of making the contract at Troy, N. Y., and agreed to pay one hundred more upon the receipt of the tables, which he ordered shipped to Middlebury, Vt.; that subsequently to the making of the contracts the plaintiff sent a draft of $100 to the national bank of Middlebury upon him for collection, which he paid, and afterwards received the tables. He also executed twelve notes to the plaintiff for the balance of the rents expressed in the contract, and afterwards paid three of said notes of $35.50 each."

The other facts are sufficiently stated in the opinion.

*A. P. Tupper* and *Lawrence & Meldon,* for the plaintiff.

The contract was made in New York; and being made there, it should be construed by the laws of that State. Story Conf. Law (2d ed.), ss. 200, 203, 242; 2 Par. Cont. 571; *Harrison* v. *Edwards,* 12 Vt. 648; *Cobb* v. *Boswell,* 37 Vt. 337; *Jones* v. *Taylor,* 30 Vt. 42; *French* v. *Hall,* 9 N. H. 137; *Langworthy* v. *Little,* 12 Cush. 109. It would be valid there. *Strong* v. *Tyler,* 2 Hill, 326. Whether a conditional sale or a lease, the title remained in the plaintiff. Rob. Dig. 623. *Martin* v. *Eamer,* 26 Vt. 476; *Duncan* v. *Stone,* 45 Vt. 118; *Grant* v. *Skinner,* 21 Barb. 581. The contract is valid between Rowe and the plaintiff; and the assignee takes no better right than Rowe had. *Winsor* v. *McLellan,* 2 Story C. C. 492; *Brown* v. *Heathcote,* 1 Atk. 160; *Jewson* v. *Maulson,* 2 Ib. 417; *Coggshall* v. *Potter,* Holm. 75; *Muir* v. *Schenck,* 3 Hill, 228; *Briggs* v. *Parkman,* 2 Met. 258; *Warren* v. *Fenn,* 28 Barb. 235–400; *In re Collins,* 12 Blatchf. 548; 12 B. R. 379; *Audenreid* v. *Betterley,* 5 Allen, 382; *Fletcher* v. *Manning,* 12 M. & W. 571; *Bank* v. *Conway,* 14 B. R. 513; *In re Griffiths,* 3 B. R. 731; *Sawyer* v. *Turpin,* 91 U. S. 114; *Whitney* v. *Eaton,* 15 Gray, 225; 126 Mass. 488. Insolvency proceedings are of an equitable nature; and it is not equitable to take one man's property to pay another man's debts. 2 Story Eq. s. 1228; *Mitchel* v. *Winslow,* 2 Story C. C. 630; *Palmer* v. *Thayer,* 28 Conn. 237.

*Stewart & Wilds,* for the defendant.

The contract is a conditional sale. *Whitcomb* v. *Woodworth,* 54 Vt. 544; *Heryford* v. *Davis,* 102 U. S. 235; *Lucas* v. *Campbell,* 88 Ill. 447; *Sewing Machine Co.* v. *Anderson,* 23 Minn. 57; 9 U. S. Dig. N. S. 661. The so-called "contract of December 16, 1881," executed by Rowe in Troy, was nothing more than a proposition by Rowe, "subject to the approval of the plaintiff." This proposition was never approved. The contract was made in this State; and having been made here, clearly the property could have "been

taken on an execution upon a judgment against" Rowe; ∕ and hence passed to the assignee under the insolvent law. R. L. ss. 1180, 1820, 1992; *Bingham* v. *Jordan*, 1 Allen, 373; Mass. Insolvent Act.

The opinion of the court was delivered by

ROWELL, J. The contract in question was a conditional sale and not a lease: *Whitcomb* v. *Woodworth*, 54 Vt. 544.

Said contract was a Vermont contract. Rowe's orders for the property were given through plaintiff's agent subject to plaintiff's approval; but instead of approving them as given, plaintiff shipped the property to Middlebury, consigned to itself, and sent a contract to Pinney materially different from that called for by the orders, and accompanied it with a draft on Rowe for $100 and twelve promissory notes for him to sign and an order on the station agent for the property, with directions to deliver the property to Rowe on payment by him of the draft and execution of the notes and the contract. Thus a new contract was proposed to Rowe, and Pinney was made plaintiff's agent to complete it with Rowe here in Vermont, as he did, and until thus completed, it was inoperative as a mutual agreement.

The next question is, Did the defendant as assignee in insolvency of Rowe acquire title to this property as against the plaintiff? To solve this question, we must determine what force our Insolvency Act gives to assignments thereunder.

Under the National Bankrupt Act, in cases of this kind, assignees stood in the place of the bankrupt. His rights were their rights; and their rights, like the lien of judgments at law, were subordinate to all prior liens, legal and equitable, on the property: *Gibson* v. *Warden*, 14 Wall. 244. So in England, as between the person having a lien and the assignees, the latter stand in the place of the bankrupt, and take his property subject to all the equitable liens

to which it would have been subject in the hands of the bankrupt himself: *Lempriere* v. *Pasley*, 2 T. R. 485; *Belcher* v. *Oldfield*, 6 Bing. N. C. 102. But by the Bankrupt Act of 1869, (32 and 33 Vict. c. 71, s. 15)—which is similar in this respect to 21 Jac. 1, c. 19, s. 11—in the case of traders, the property of the bankrupt divisible among his creditors comprises, *inter alia*, all the goods and chattels that are at the commencement of the bankruptcy in the possession, order, or disposition of the bankrupt by the consent and permission of the true owner, whereof the bankrupt is reputed owner, or whereof he has taken upon himself the sale or disposition as owner. The object of this enactment is, to prevent persons in trade from obtaining false credit by the possession and apparent ownership of goods not their own, and thereby deluding their creditors; and it has received a liberal construction: *Gordon* v. *The East India Company*, 7 T. R. 228. So by the Bankrupt Law Consolidation Act of 1849, if *any* bankrupt, at the time he became so, had in his like possession, order, or disposition, any goods or chattels whereof he was reputed owner, or whereof he had taken upon himself the sale, &c., as owner, the court *might order* the same to be sold and disposed of for the benefit of the creditors under the bankruptcy. A somewhat similar provision was contained in 6 Geo. 4, c. 16, s. 72.

So under the Bills of Sale Act of 1854, unless the vendee files the bill of sale in the proper office within the time limited therefor by the act, or takes possession of the property within that time, the bill, as against the assignees in bankruptcy and insolvency of the person making the same, is null and void as far as regards the property in, or the right of possession of, any chattel comprised therein, that, at or after the time of the bankruptcy or of filing the insolvent's petition, was in the possession or the apparent possession of the maker. The purpose of this act, as shown by its preamble, was, to prevent the frauds that were frequently committed on creditors by secret bills of sale of personal

chattels, whereby persons were enabled to keep up the appearance of being in good circumstances and possessed of property, whereas the grantees or other holders of such bills had the power of taking possession of the property of such persons to the exclusion of their other creditors.

Our Liens Act—R. L. s. 1992—provides that no lien reserved on personal property sold conditionally and passing into the hands of the conditional purchaser, shall be valid against attaching creditors or subsequent purchasers without notice, unless the vendor takes a written memorandum, signed by the purchaser, witnessing such lien, and causes it to be recorded in the proper office within a time limited. This act points to the same evil that the 21 Jac. and the 32 and 33 Vict. sought to remedy in the case of traders, and the Bills of Sale Act generally, namely, the obtaining of false credit: And such statutes should be construed and administered with a reasonable degree of liberality, that they may as far as possible effectuate the purpose of their enactment.

It is obvious that this same evil may exist in the case of insolvent debtors and bankrupts as well as in other cases, and that the creditors of such persons need protection therefrom as much as the creditors of any other debtors; and it would seem that in this behalf our Insolvency Act has embodied the spirit of the English acts to which we have referred, as well as of our Liens Act, and especially of the Massachusetts Insolvency Act of 1838, of which in respect to the effect given to assignments thereunder it is a transcript,—in the provision that "an assignment under order of a court of insolvency shall vest in the assignee all the property of the debtor, real or personal, which * * * * might have been taken on execution upon a judgment against him at the time of the filing of the petition." R. L. s. 1820. This language is too explicit for interpretation. By it the assignee is clothed with much higher and more extensive rights than the debtor himself possessed, and un-

Collender Co. *v.* Marshall.

der it the simple question is, Could the property in question have been taken on execution against the debtor at the time of filing his petition? If it could, it passed to the assignee by the very terms of the statute. This has always been the effect given in Massachusetts to assignments under the act of 1838, as will be seen by referring to *Clark* v. *Minot*, 4 Met. 346; *Bingham* v. *Jordan*, 1 Allen, 373; and *Freeland* v. *Freeland*, 102 Mass. 477. And *Audenried* v. *Betterley*, 5 Allen, 382, is not to the contrary; for it decides only that the right to treat property that is fraudulently represented as the property of the debtor as though it really were his, is a personal right of the creditor who is defrauded, and not transferable by the assignment for the benefit of the creditors generally; in other words, that rights by estoppel between a creditor and third persons do not pass by the assignment.

But it is said that this case is different from the Massachusetts cases, and especially from *Bingham* v. *Jordan*, in which the property was once the debtor's and remained in his possession, because here it never was the debtor's as against the plaintiff. But it is obvious that both cases are equally within the mischief sought to be remedied by the law, and so within the policy and provision of the law; and while, as said by Mr. Justice GROSE in *Gordon* v. *The East India Company*, "it is always unfortunate when the goods of one person are taken to pay the debt of another," yet it were better thus than that by the conventional possession of another's goods one may have the means of deluding and defrauding his creditors.

This being a Vermont contract, no question is made but that under the circumstances of this case this property could have been taken on execution against Rowe at the time of filing his petition; and the result is,

Judgment affirmed.