SAMUEL DESANY *vs.* THOMAS W. THORP.

L. F. WILBUR, assignee, *vs.* THOMAS W. THORP.

January Term, 1897.

Present: ROSS, C. J., TAFT, ROWELL, MUNSON and START, JJ.

*Attachment no Waiver of Lien—Pendency of Action no Bar to Sale under Lien—Return of Sale Amended—Election of Remedies—Reservation of Lien on Products—Requisites of Vendor's Lien—Increase when Held by Lien—Sufficiency of Description—Peaceable Entry—Rights of Assignee in Insolvency—Wood and Lumber Cut by Mortgagor—Creditor's Liability for Acts of Officer—V. S. 2098.*

A mortgagee or lien-holder is not debarred from pursuing his remedies under the security by the fact that he has caused the encumbered property to be attached in an action at law, nor by the fact that the action is still pending.

The court may permit an officer to amend his return of sale on a chattel mortgage by including therein the proceeds of property inadvertently omitted or applied upon another security between the same parties, no rights of others having intervened.

A mortgagee of personal property is not debarred from pursuing his remedy by sale under the mortgage, merely because he has prayed for a foreclosure against the same property in a petition to foreclose a real estate mortgage securing the same debt.

A grantor may reserve the crops to be thereafter grown upon the land conveyed, as security for the purchase money, but a reservation of "all the crops, produce and products raised or grown hereafter on said premises," does nor cover the increase of stock placed upon the farm, for the increase cannot be held as the produce or product of the realty.

Neither does such a reservation hold the butter produced upon the farm.

In a deed of·real estate certain personal property was included and such words employed as would create a vendor's lien thereon as between the parties, and the deed was duly recorded.   *Held*, that the lien was of no effect as against attaching creditors without notice, because not · evidenced by a writing signed by the purchaser, and not affording such record notice as the law contemplates.

The vendor's right under such a lien to take possession of the property or, in case of stock, of the increase thereof, depends upon his doing so before attachment or insolvency proceedings.

A description of property in a chattel mortgage as "eighteen cows, three yearling heifers and five heifer calves," is sufficient when it appears that the mortgagor owned no others of the same description.

A mortgagee of animals cannot hold the increase thereof, not in the womb at the time when the mortgage is given, as against third persons, after the period of nurture has passed, without taking it into possession.

The defendant's entry and taking possession of the real and personal property, as mortgagee, in the manner found by the county court, is *held* to have been peaceable and lawful.

A mortgagee of personal property caused it to be attached by copy in the town clerk's office; soon after which the mortgagor filed his petition in· insolvency.  The mortgagee then took actual possession.  The mortgagor having been afterwards adjudged an insolvent upon said petition, it was held that the assignee's title related back to the filing of the petition, so that the actual possession was ineffectual, and that the attachment by copy was unavailing, being dissolved by the insolvency proceedings.

Under V. S. 2098 the assignee takes all the property which could have been taken on an execution against the debtor at the time the petition was filed.

Lumber and stove-wood cut by the mortgagor upon the mortgaged premises, after condition broken, to be used in repairing the fences ·and buildings and keeping fires upon the place, belong to the mortgagee, subject only to the mortgagor's right to use them for the purposes named, and cannot be diverted from such use by the mortgagor, or by his assignee in insolvency.

The mere exchange of a mortgaged article for another of the same kind, ·· although made by the mortgagor with the consent of the mortgagee, does not subject the new article to the mortgage.

*Kelsey* v. *Kendall*, 48 Vt. 24, distinguished.

A mortgagee is not necessarily liable in trover for a wrongful sale, by an officer, under the mortgage.  Whether he is liable depends upon ·the instructions, and if no specific instructions are given, the officer is · directed to do only what the mortgage itself authorizes.

In such a case the mortgagee does not become a wrong-doer by accepting · the proceeds of the sale, unless it be with full knowledge of the facts, and such knowledge will not be presumed merely because the officer has made a return of his doings upon the mortgage and filed it in the town clerk's office as required by law.   ·  ·        ·           ·         ·  . .:; ·.

The cases were tried together. The first is trover with a count in trespass; the second, trover in two counts. Plea, the general issue in each case. Trial by court at the September Term, 1896, Chittenden County, *Tyler*, J., presiding. Judgment for the plaintiff· in each case. Both parties excepted.

The court found the following facts: The defendant was appointed guardian unto George H. Thorp in June, 1894. April 21, 1884, George H. Thorp had conveyed to the plaintiff Desany a farm of one hundred acres by a deed which contained the following clause, "also thirteen cows, all the sugar tools, farming tools, and dairy tools, conditionally. The said Thorp reserves the ownership and control of all said personal property, and all of the crops, produce and products raised or grown hereafter on said premises, until two thousand dollars of said notes, given for the purchase money secured by mortgage on said premises, is paid." On the same day Desany mortgaged to said George H. Thorp the same real estate to secure twenty-seven notes amounting to four thousand five hundred seventy-eight dollars. On the same day Desany placed on the farm five other cows which he owned and gave said George H. a chattel mortgage thereon to secure a part of said notes.

February 1, 1889, Desany gave to said George H. Thorp a chattel mortgage upon "eighteen cows, three yearling heifers, five heifer calves" and some other personal property to secure some of said notes.

The interest upon said mortgage debt was paid to April 21, 1896, but a portion of the principal secured by each of said mortgages was overdue and unpaid at the time of the proceedings in question. The two thousand dollars mentioned in the reservation of the lien had not been paid.

April 6, 1896, the guardian brought a suit in assumpsit against Desany on the mortgage debt and caused all his attachable property including what was afterwards taken under the lien and chattel mortgage, to be attached by copy

in the town clerk's office, but without moving any part thereof. Service of said writ was completed, and the suit is now pending. Desany filed his voluntary petition in insolvency, April 13, 1896, before eleven o'clock in the forenoon. The defendant had no notice of the filing of said petition. On the same day in the afternoon the guardian caused notices to be posted by a deputy sheriff advertising the property described in the chattel mortgage of February 1, 1889, for sale thereunder, and caused written notice thereof to be given to said Desany. April 23, 1896, the guardian took possession of said mortgaged farm and all the personal property thereon that is described in the officer's return of sale, and of such forage and grain as was necessary to keep the live stock on said farm from that date to June 8th.

April 28, 1896, Desany was adjudged insolvent, and the plaintiff Wilbur became his assignee and received the conveyance of the insolvent's real and personal estate. On the same day the guardian brought his petition of foreclosure against Desany and Wilbur, which was served on them May 2, 1896, to foreclose the real estate mortgage. Said petition also sought the foreclosure of the defendant's interest in the personal property reserved in the original deed, including the products of the farm, the increase of the original thirteen cows, and other live stock grown on the farm. May 25, 1896, he caused notices of a sale under the lien in the deed to be posted by the same deputy sheriff who had advertised the sale under the chattel mortgage. Said deputy made a return showing that the sale took place pursuant to the above-mentioned notices, without distinguishing between the notice under the chattel mortgage and that under the lien. He had adjourned from time to time the sale under the chattel mortgage, so that the sale on the mortgage and the sale on the lien were duly advertised to occur at the same time and place. At the sale the officer did not state to the bidders that he was selling under any

particular lien, mortgage or right, but sold it without comment in that regard.    The sale occurred June 8, 1896. All the cows and other cattle thus sold at auction were descendants in female line of the original thirteen cows reserved in the deed from Thorp to Desany and of the five cows covered by the mortgage of the same date, except three cows and one calf which had been afterwards brought to the farm by Desany.

When Desany gave the chattel mortgage of 1889 he had but eighteen cows, three yearling heifers and five heifer calves, the numbers therein named.    None of the property taken was the actual property reserved in the original lien, except what was covered by the chattel mortgage of 1889. Five of the cows sold were in the chattel mortgage of 1889, to wit, the two cows returned as sold under the chattel mortgage, the cow omitted which was sold to Cahill, the cow returned under the lien as the Jersey cow sold to Shiner and the cow returned as sold under the lien to Atchinson. The bay mare was bred by Desany on the farm, from a mare which he bought elsewhere, and, with another horse, constituted his team which was of less value than two hundred dollars and claimed by him as exempt.    The four shoats were purchased by Desany in the fall of 1895 and afterwards kept on the farm.    The timber, stove-wood, oats, corn, potatoes, sugar, butter and pork, taken and sold, were all produced on the farm.    The stove-wood was cut and prepared to support the fires in the house on the farm and the lumber was cut for the purpose of repairs.    The original mowing machine, which was among the farming tools reserved in the deed from Thorp to Desany and also included in the mortgage of February 1, 1889, was exchanged by Desany in June, 1890, for the machine sold at auction, the old one being valued in exchange at five dollars and the new one at forty-five dollars.    George H. Thorp consented to this arrangement and signed a note with Desany for the difference, and the new machine was kept and used on the

farm. The note was paid by Desany. The bay mare, one of said cows subsequently purchased and brought to said farm by Desany, and one of said shoats, together with the other articles for which Desany claimed to recover, were selected by him with the consent of the assignee as exempt.

The manner of taking possession was as follows: The guardian went to the house in Desany's absence and was admitted alone and without force, by a boy eighteen years old who was at work for Desany. The guardian was blind and at his request was led into the house by the boy, who was not aware of his purpose. The guardian's son, Ira, a deputy sheriff, who had driven his father to the premises, was sitting in his wagon in the highway in front of the house. The guardian notified the boy that he had taken possession and sent him away, after permitting him to pack and remove his effects. He then caused the household effects of Desany to be removed to the wood-shed by two men besides Ira, whom he had employed for that purpose, but who were not present when he took possession, though they were stationed within calling distance. The bay mare, harness and wagon which had been left by the boy at a neighbor's about half a mile away were also taken into the guardian's possession.

It appeared that at the sale the officer sold a cow to Cahill for $20.25 which was by mistake left out of the return, although the price was reckoned into the proceeds, and that the officer intended to return the cow as sold under the chattel mortgage. The court allowed him to amend his return accordingly. It was the intent of the officer to return as sold under the chattel mortgage the cows sold to Shiner and Atchinson, but by mistake they were returned as sold under the lien, the officer failing to identify them as cows covered by the mortgage. The court permitted the officer to amend his return to conform with his intention in this respect.

Upon the foregoing facts the court held that the defendant

at the time of the auction sale had no title to, or lien upon, any of the property sold, by virtue of the reservation in the deed, nor by his taking possession on April 23, 1896; and that he had no title to, or lien upon, any of the products of the farm, nor to the increase of the live stock as against the plaintiff assignee; but that he could hold the personal property described in the mortgage of February 1, 1889, in existence and sold at the time of the auction, but not property substituted therefor, like the mowing machine.

The other facts and rulings are sufficiently stated in the opinion.

*L. F. Wilbur* and *Charles T. Barney* for the plaintiffs.

I. In the case of Wilbur, assignee, the county court correctly rendered judgment for all the property in the plaintiff's specification which was not mentioned in the chattel mortgage of February 1, 1889.

(1) The mortgagee, under a chattel mortgage, has no right to the increase of animals beyond the period of nurture, unless the increase is mentioned in the mortgage. *Enright* v. *Dodge*, 64 Vt. 502; and not then unless he takes possession before the rights of third parties have attached. *In re Allen's Estate*, 65 Vt. 392.

(2) The grantor in a deed of real estate, not executed and recorded as a chattel mortgage, cannot reserve a lien upon personal property included in the deed, nor on the increase of the same, nor on the crops, products and produce of the realty thereafter to be raised, as against the assignee in insolvency of the grantee. *Collender Co.* v. *Marshall*, 57 Vt. 232; *Stafford* v. *Adair*, 57 Vt. 63; *Jones* v. *Richardson*, 10 Met. 481.

(3) The assignment related back to the filing of the petition. V. S. 2099.

(4) The defendant had no lien upon "the crops, product and produce," because there was no compliance with the statute relating to a conditional vendor's lien. V. S. 2290.

(5) The crops and products were liable to attachment against Desany when his petition was filed. *Cooper* v. *Cole*, 38 Vt. 185.

II. The action of the defendant in taking possession of the property on the 23d of April was unlawful and a conversion *Smith* v. *Wood*, 63 Vt. 534; *Roberts* v. *Hunt*, 61 Vt. 612. The possession was not taken by an officer, but by the defendant himself. The statutory method of foreclosing under a chattel mortgage is exclusive.

III. The chattel mortgage of February 1, 1889, so far as it relates to the live stock, is void for insufficient description. It does not state where the animals were kept or in whose possession, nor does it appear from the mortgage that they were all of the kind named which the mortgagor owned. *Huse* v. *Estabrooks*, 67 Vt. 223; *Parker* v. *Chase*, 62 Vt. 206; Jones on Ch. Mtg. § 55.

IV. The defendant attached all of the personal property included in the real estate deed of 1884 and in the chattel mortgage of 1889, so far as it was in existence, and all the increase and products of the same and of the farm, in an action against Desany upon the same debt for which the different securities were given; and he is still prosecuting that action. He also proceeded to sell under the chattel mortgage and to foreclose on his real estate mortgage, and in the latter proceeding prayed for a foreclosure of the lien reserved in the real estate deed.

(1) By the attachment the defendant elected between two inconsistent remedies. *White* v. *White*, 68 Vt. 161.

(2) The attachment was a waiver of the mortgage and lien. *Evans* v. *Warren*, 122 Mass. 303.

(3) The attempt to foreclose the lien in chancery was a waiver of the right to proceed by sale. *Whiting* v. *Adams*, 66 Vt. 679. The right to redeem vested in the land and crops together, and the two could not be separated.

(4) The only legal course open to the defendant, after the filing of the petition in insolvency, was to require a sale

under the order of the court of insolvency. V. S. 2076. The assignee had the same right but was deprived of it by the conduct of the defendant.

(5) The taking of the chattel mortgage of 1889 extinguished the lien reserved in the conditional deed of 1884 so far as it applied to the same property. *Howard* v. *Witters*, 60 Vt. 578.

V. It was error to allow the officer to amend his returns on the lien and mortgage. His returns when made and recorded were conclusive.

In the case of *Desany* v. *Thorp*, the plaintiff seeks to recover for his exempt property, selected by him with the consent of the assignee.

(1) The mare, cow, hog, hens and turkeys, of the value of $91.50, were property upon which the defendant never had any claim. The butter belonged either to the plaintiff or to the assignee and became the plaintiff's at least by his arrangement with the assignee. The wood and lumber were cut for use on the place and belonged to the plaintiff.

(2) The plaintiff was entitled to his exemptions notwithstanding the attempt to reserve a lien in the deed of 1884.

(3) If the plaintiff is not entitled to the wood and lumber he can hold it by the assignee's consent, for the defendant has no right.

*J. J. Monahan* and *W. H. Bliss* for the defendant.

I. As to the cow and hog, their growth was a product of the farm, and the defendant was the owner of such growth, and at least a tenant in common with Desany in these animals; and it not being found that the animals were destroyed, trespass and trover will not lie for their taking and sale. *Lewis* v. *Clark*, 59 Vt. 363. The mare was a product of the farm. So were the butter and sugar. The corn, oats and potatoes were held by the lien as crops. The lien was undoubtedly good as to the crops against all the world, and it must equally extend to animals "raised or

grown on said premises," and to the butter and sugar produced thereon, unless the court reads the words, "produce and products," out of the reservation. "Crops" would have been sufficient unless the parties meant to include "produce and products" of this nature. The rule in this State is that such reservations are valid as well in a deed as in a lease and are not conditional sales requiring a written memorandum signed by the purchaser. *Batchelder* v. *Jenness*, 59 Vt. 104; *Darling* v. *Robbins*, 60 Vt. 347; *McCole* v. *Varnum*, 64 Vt. 163. In *Van Hoozer* v. *Cory*, 34 Barb. 9, it was held that the expected products of a dairy and farm were the subject of a grant as being potentially in existence. And *Conderman* v. *Smith*, 41 Barb. 404, is to the same effect. In *District of Columbia* v. *Oyster*, 4 Mackey 285, butter and eggs were held to be produce although not directly the produce of the soil. So in *The Mayor* v. *Davis*, 6 Watts and Serg. 279, "swine, horses, neat cattle, sheep, manure, cord word, hay, and many other things not more savory," are held to be "strictly produce of the farm."

II. The entry and taking possession were lawful. *Fuller* v. *Eddy*, 49 Vt. 11; *Hamblet* v. *Bliss*, 55 Vt. 535.

III. The mowing machine was subject to the mortgage. *Kelsey* v. *Kendall*, 48 Vt. 24.

IV. The lumber and wood belonged to the mortgagee. *Langdon* v. *Paul*, 22 Vt. 205; *Mason* v. *Gray*, 36 Vt. 311.

V. It is exceedingly doubtful whether under our insolvent law the assignee has any greater rights than the insolvent. *Stafford* v. *Adair*, 57 Vt. 63; *Gilbert* v. *Vail*, 60 Vt. 261; *Rogers* v. *Heath*, 62 Vt. 101. But if any such greater rights would otherwise have been gained by the assignee, they were defeated by the defendant's prior possession, which related back to the original reservation and was not in contravention of the insolvent law. *Child* v. *Allen*, 33 Vt. 476; *Burnham* v. *Marshall*, 56 Vt. 365; *Peabody* v. *Landon*, 61 Vt. 318; *Moses* v. *Rogers*, 62 Vt. 84; *Rice's Assignees* v. *Hulett*, 63 Vt. 321.

MUNSON, J.  These cases were heard together.  Thorp, the defendant in both suits, held against Desany, the plaintiff in the first suit, a real estate mortgage, two chattel mortgages, and a lien reserved upon the transfer of certain personal property in a real estate conveyance; and after conditions broken he brought suits of foreclosure and attachment, and took possession of both the real and personal property, and had certain personal property sold under the lien and the second chattel mortgage.  Wilbur, the plaintiff in the second suit, is Desany's assignee in insolvency.  The cases will be considered together.

The attachment placed upon the personal property covered that afterwards taken on the reserved lien and the second chattel mortgage.  This attachment was dissolved by the proceedings in insolvency, but the suit was entered in court and is still pending.  The attachment did not debar the creditor from pursuing his remedies under the lien and the chattel mortgage.  *Reed* v. *Starkey*, 69 Vt. 200.  See *Tilton* v. *Miller*, 34 Vt. 576; *Brigham* v. *Avery*, 48 Vt. 602.  Nor does the pendency of the suit.  It can proceed to judgment only by leave of the court of insolvency and for the purpose of determining the amount due.  V. S. 2071.

The property was disposed of at a sale duly advertised to take place under both the lien and the mortgage, and without any statement confining the disposal of a given article to either security.  The court could properly permit the officer to amend his return on the mortgage by including the cow inadvertently omitted and the two cows returned as sold under the lien.  Nothing affecting the insolvent estate unfavorably has been done or omitted by reason of these errors, and no rights of other parties have intervened.

The fact that the defendant, in his foreclosure of the real estate mortgage, petitioned also for a foreclosure of all the personal property claimed by virtue of the reserved lien, did not defeat his right to proceed at law.  His different proceedings did not stand upon inconsistent grounds; and

any remedy available in the foreclosure suit is waived on argument herein.

It is held in this State that a grantor may reserve the crops to be thereafter grown upon the land conveyed, as security for the purchase money. *Batchelder* v. *Jenness,* 59 Vt. 104; *Darling* v. *Robbins,* 60 Vt. 347. The reservation in this case is of "all the crops, produce and products raised or grown hereafter on said premises"; and the defendant claims that this covers the increase of all stock placed upon the farm. But we think the increase of stock cannot be held as the produce or product of the realty. A reservation of crops is sustained on the ground that they are potentially in the land, but animals are not the direct product of the soil. If the defendant has any title to the animals raised on the farm, it must be as the increase of stock of which he remained the owner.

In the deed which the plaintiff received of the farm there was also a conveyance of thirteen cows and other personal property, conditionally, the grantor reserving the ownership and control of the property. The words here employed are such as create a conditional vendor's lien. This reservation of chattels, while good as between the parties, was of no effect as against attaching creditors without notice, because not evidenced by a writing signed by the purchaser, and not affording such record notice as the law contemplates. So the defendant's right to the articles reserved and returned as sold under the lien depends upon the question of possession.

The defendant also claims to hold the increase of the stock upon which this lien was reserved. The defendant remained the general owner of the property; *French* v. *Osmer,* 67 Vt. 427; and as long as the conditional vendee's title remained unperfected, he had the same right to the increase that he had to the original animals; for the progeny of animals belongs to the owner of the female. But as the lien was good only as between the parties, the vendor's

right to the increase, as well as to the original animals, depended upon a seasonable taking of possession.

The mortgage of 1889 covers eighteen cows, three yearling heifers and five heifer calves. The case shows that at the time this mortgage was given the mortgagor had but eighteen cows, three yearling heifers and five heifer calves. In *Huse* v. *Estabrooks*, 67 Vt. 223, a description of animals by sex and age only was held insufficient where there was no finding that the mortgagor did not own other animals of the same description. But we think such a description, and even a designation of so many cows, ought not to be held insufficient when it appears that the mortgagor owned no others of the description given. The plaintiffs make no question as to the sufficiency of the remainder of the description, so we give the matter no examination.

Assuming that the chattel mortgage gave the defendant a title to the increase of the mortgaged animals that was good as against the debtor, the defendant could not hold such increase as against third persons, after the period of nurture had passed, without taking it into possession. *Enright* v. *Dodge*, 64 Vt. 502. It appears then that as far as the increase is concerned the defendant's right under the mortgages, as well as his right under the lien, depends upon the question of possession.

There was nothing in the manner in which the defendant took possession of the property to deprive him of the rights which ordinarily follow possession. The entry was peaceable and lawful. *Fuller* v. *Eddy*, 49 Vt. 11.

The attachment of the property prior to the filing of the insolvency petition, by leaving a copy in the town clerk's office, afforded no support to the defendant's title. The property was taken into actual possession on the 23d of April, which was after the petition was filed, but before the adjudication of insolvency. The title of the assignee relates back to the time of the filing of the petition. *Platt* v. *Continental Ins. Co.*, 62 Vt. 166. At that time the debtor

was in possession of all the property of which the defendant required possession to perfect his right. If a creditor without notice had then levied an execution upon it, he would have held it against the defendant's lien and mortgage. It follows that the assignee will hold it under his deed of assignment. The assignee takes all the property which could have been taken on an execution against the debtor at the time the petition was filed. V. S. 2098; *Collender Co.* v. *Marshall,* 57 Vt. 232; *Rice's Assignees* v. *Hulett,* 63 Vt. 321.

The horse, cow and hog, claimed by the debtor under the exemption, were not a part of the incumbered stock, and were properly included in the Desany judgment. The oats, potatoes, corn, beans and sugar, were held by the lien, and none of them should have been included in either judgment. The butter was not so held, and not being exempt, it should have been excluded from the Desany judgment, and included in that of the assignee. The lumber cut for the repair of buildings and fences should not have been included in the assignee's judgment. The implied license under which it was cut devoted it to a specific purpose, and it could not be diverted from that purpose either by the mortgagor or his creditors. Nor should the stove-wood have been included in the Desany judgment. The debtor's right to it was confined to its use on the place. Subject to that right, it was the property of the mortgagee. The defendant concedes that the hayrack is properly included in the Desany judgment. It is not necessary to inquire whether articles were improperly omitted from that judgment, for the plaintiff's exceptions were waived on the argument.

There seems to be some uncertainty in the designation of one or more of the cows, but as the court ruled that the defendant could hold the property covered by the mortgage of 1889 we assume that no cows covered by that mortgage are included in the assignee's judgment. The live stock not specified in that mortgage, and the item of pork, were

properly included in the judgment for the reasons before stated. The mowing machine was properly included. It was one taken in exchange for the one mortgaged, with the consent of the mortgagee, but the findings are not sufficient to subject it to the lien. *Kelsey* v. *Kendall*, 48 Vt. 24. No claim is made but that the syrup barrel is properly included, and we leave the item without consideration. The buggy wagon and driving harness were covered by the mortgage of 1884. No question is made as to the sufficiency of their description. The officer advertised the property under both mortgages, but he sold only under the mortgage of 1889. It is not necessary to consider whether the officer could justify the sale. There might be a wrongful sale by the officer without the mortgagee being liable in trover. *Hyde* v. *Cooper*, 26 Vt. 552. It appears that the mortgagee placed the papers in the hands of the officer without giving him any specific instructions. So there was no direction to do anything that the mortgages did not authorize. Nor can the mortgagee be held to have become a wrongdoer by ratification. If the case is one where an acceptance of the avails might amount to a ratification, it could only be upon an acceptance with full knowledge of the facts. There is no finding that the mortgagee had this knowledge, and he cannot be presumed to have ascertained it from the return upon his mortgage, for the officer was required to file that in the town clerk's office. So these articles were improperly included in the judgment.

> *Judgments reversed, and judgment in Desany* v. *Thorp for $92.50, and judgment in Wilbur* v. *Thorp for $304.60.*