Belknap, }
Nov. 9, 1901. }

## CHURCHILL *v.* DEMERITT.

Where the affidavit required upon a conditional sale of personal property is subscribed by an agent of the party described in the memorandum as the vendor, the lien attempted to be retained cannot be enforced against a subsequent innocent purchaser from the conditional vendee.

TROVER, for the conversion of a colt. Facts found by a referee, and case transferred from the November term, 1900, of the supreme court by *Chase,* J.

One Bartin, who had possession of the colt, sold it to the defendant, who had no actual knowledge of the plaintiff's claim and was not put upon inquiry so as to be chargeable with notice. The colt had been previously sold to Bartin by the plaintiff, under the name of M. E. Churchill, through her duly authorized agent, C. I. Churchill, the vendor retaining a lien thereon, as set forth in the following duly recorded memorandum :

### " CONDITIONAL SALE.

" I, Ezra O. Bartin, of Barnstead, in the state of New Hampshire, do hereby acknowledge that on March 2d, A. D. 1898, . . . one sorrel colt . . . purchased by me of M. E. Churchill of Alton and this day delivered to me, the said M. E. Churchill is entitled to and retains a lien thereon for the amount of forty dollars, . . . being the portion of the price unpaid, and that the title is not to pass to me till the whole of said sum is paid.

" EZRA O. BARTIN.

" March 2, 1898.

### " STATE OF NEW HAMPSHIRE.

" BELKNAP CO. We severally swear that the foregoing memorandum is made for the purpose of witnessing the lien and the sum due thereon, as specified in said memorandum, and for no other purpose whatever, and that said lien and the sum due thereon were not created for the purpose of enabling the purchaser to execute said memorandum, but said lien is a just lien, and the sum stated to be due thereon is honestly due thereon, and owing from the purchaser to the vendor.

" EZRA O. BARTIN.<br>" C. I. CHURCHILL.

" Sworn to by Ezra O. Bartin and C. I. Churchill for M. E. Churchill, before me.

" JOHN GEORGE, *Justice of the Peace.*

" BARNSTEAD, N. H., March 2, 1898."

If the foregoing memorandum and the record thereof were sufficient to protect the lien against the defendant, the plaintiff is to have judgment; otherwise, there is to be judgment for the defendant.

*Sumner E. Blackstone* (with whom was *Frank M. Beckford*), for the plaintiff.

*Jewett & Plummer*, for the defendant.

PARSONS, J.   A conditional sale of personal property, as the term is used in the statute, means a contract of sale under which the property is delivered to the purchaser upon the condition that the title is not to pass until payment is made.   *Gerrish* v. *Clark*, 64 N. H. 492.   In a chattel mortgage the possession of the property mortgaged remains in the vendor, and the title conveyed is defeated by the performance of the condition.   In each case the apparent ownership evidenced by possession is subject to a secret agreement as to title.   In either case, in the absence of statute, the secret agreement is valid and may be enforced against a subsequent purchaser from or attaching creditor of the apparent owner. *Ash* v. *Savage*, 5 N. H. 545; *Weeks* v. *Pike*, 60 N. H. 447, 448. Immediately after the decision in *Ash* v. *Savage*, the statute provisions relating to personal mortgages were adopted.   *Hill* v. *Gilman*, 39 N. H. 88; *Gooding* v. *Riley*, 50 N. H. 400, 411.   The danger of false credit arising from the appearance of ownership created by possession (*Collender Co.* v. *Marshall*, 57 Vt. 232, 236), and the opportunity for fraud through a secret agreement as to title, are substantially the same in the one case as the other; but the former did not become the subject of legislative regulation until 1885.   The act then passed and now in force (P. S., *c.* 140, *ss.* 23–26) is, in effect, an extension of the existing regulations upon the subject of chattel mortgages to conditional sales.   The use of substantially the same language for the prevention of the same evil establishes the legislative purpose to apply the same rule. Hence the prior adjudications upon the subject of chattel mortgages under the statute are authority upon the application of similar provisions to conditional sales.   Therefore the statute, which prescribes the manner in which the written memorandum witnessing the lien retained upon a conditional sale shall be executed, must in general be strictly complied with.   *Hill* v. *Gilman*, 39 N. H. 88.   And if, in the absence of notice, the memorandum does not show that each party made and subscribed the requisite oath, the lien attempted to be retained cannot be enforced against a subsequent purchaser from or attaching creditor of the condi-

tional purchaser in possession (P. S., *c.* 140, *ss.* 6, 12, 23, 24 ;: *Lovell* v. *Osgood*, 60 N. H. 71 ; *Stone* v. *Marvel*, 45 N. H. 481) ; for it is the intent of the statute " that an inspection of the record should inform all parties whether the " memorandum " had been legally executed." *Stone* v. *Marvel*, 45 N. H. 481, 482.

The only exception to the language of section 24, that " each vendor and purchaser shall make and subscribe an affidavit in sub- stance " as set out in the section, is found in the following section (*s.* 25), that " when copartners or corporations are parties to such a memorandum, the affidavit may be made and subscribed as in case of mortgages of personal property," namely, by one of the· copartners, or by one of the directors of the corporation, or by some· person duly authorized.   P. S., *c.* 140, *ss.* 7, 8.   From this section it is apparent the legislature understood the parties to the sale — the vendor and the purchaser — would be disclosed by the memo- randum, and the application of the exception would be shown by the record ; for the exception is made to apply, not when a copart- nership or corporation are parties to the sale, but when they are parties to the memorandum.   The statute intends that the person or persons set out in the memorandum as the vendors should make·: and subscribe the oath except in the two cases for which provision is made.

In the present case, the memorandum signed by the purchaser acknowledges the purchase of M. E. Churchill, the delivery of the colt, and the retention of the lien by M. E. Churchill.   The par- ties to the memorandum are Ezra O. Bartin and M. E. Churchill. M. E. Churchill did not sign the memorandum as vendor, and she· was not required by statute to do so ; but she accepted it, placed it upon record, and is now relying upon it.   Like a deed poll when accepted by the grantee (*Burbank* v. *Pillsbury*, 48 N. H. 475, 476), the memorandum when accepted by the vendor becomes the· mutual act of the parties.   It is conceded that the affidavit of the vendor is essential to the retention of a valid lien; but it is con- ·tended upon the facts that since C. I. Churchill made the contract of sale, as the authorized agent of the plaintiff, he was the ʼvendor within the meaning of the statute.   Even if this claim can be· maintained (a proposition which is at least not entirely clear), it would not avail the plaintiff ; for the statute (*s.* 23) requires that the memorandum should be taken by the vendor.   The record does not show that C. I. Churchill, if he was the vendor, took a memorandum or reserved a lien.   If C. I. Churchill were the vendor in the actual transaction, he must be regarded as the vendor for the purpose of compliance with section 23 as well as with sec- tion 25.   The memorandum in no way connects C. I. Churchill with the transaction.   So far as appears therefrom, the record discloses.

merely a sale and retention of lien by one person and an affidavit by an entire stranger.

The case is precisely as if C. I. Churchill had taken a note and mortgage to M. E. Churchill, and had subscribed and taken the oath himself. If he had made himself mortgagee with a note running to himself, assuming that his authority extended that far, the mortgage would have been valid. *Lathrop* v. *Blake*, 23 N. H. 46. Whether if the transaction had been fully set forth in the memorandum, so that the fact of agency clearly appeared, the oath of the agent would be sufficient, is a question not now before us. As the statute allows twenty days in which to complete and record the memorandum (P. S., c. 140, s. 26), the necessity for such a course cannot often arise. Whatever view may be taken of that question when it is reached, it is clear that in the present case the record does not disclose a legal execution of the memorandum of sale (*Stone* v. *Marvel*, 45 N. H. 481, 482); and there must be, according to the stipulations of the case,

*Judgment for the defendant.*

All concurred.