## LOEWE v. SAVINGS BANK OF DANBURY.

(Circuit Court of Appeals, Second Circuit. July 3, 1916.)

No. 286.

1. COURTS ⏆366(10)—FEDERAL COURTS—STATE LAWS AS RULES OF DECISION —ATTACHMENT.

The remedy by attachment being statutory, the rights of an attacking creditor in a federal court are governed by the state law, as declared by the highest court of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 965; Dec. Dig. ⏆366(10).]

2. GARNISHMENT ⏆115—LIEN OF GARNISHMENT—INTEREST ON SAVINGS BANK DEPOSIT.

Although by the law of Connecticut an attachment creditor acquires only the rights which the debtor had at the time of attachment, where an attachment is served by garnishment of a savings bank in which the debtor is a depositor and the bank is bound by contract to pay interest or dividends on the deposit, the interest accruing thereafter is but an incident of the deposit and is bound by the attachment.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 234; Dec. Dig. ⏆115.]

In Error to the District Court of the United States for the District of Connecticut; Edwin S. Thomas, Judge.

Action at law by Dietrich E. Loewe, as surviving partner of the firm of D. E. Loewe & Co., against the Savings Bank of Danbury. From the judgment (226 Fed. 294), plaintiff brings error. Modified and affirmed.

Daniel Davenport, of Bridgeport, Conn., and Walter Gordon Merritt, of New York City, for plaintiff in error.

John H. Light, of South Norwalk, Conn., and John R. Booth and J. Moss Ives, both of Danbury, Conn., for defendant in error.

Martin J. Cunningham, of Danbury, Conn., and William F. Tammany, of South Norwalk, Conn., for United Hatters of North America.

Before COXE and ROGERS, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

ROGERS, Circuit Judge. An action was commenced by the present plaintiff and others in the Circuit Court of the United States for the District of Connecticut 13 years ago to recover damages from the members of a trade union charged with conspiracy in restraint of interstate commerce. The questions involved were before that court

at various times, and were before this court on several occasions, and were three times before the Supreme Court of the United States. The plaintiffs were manufacturers of hats at Danbury, Conn., where they maintained a factory. The defendants in the original suit were members of a combination called the United Hatters of North America, and they were charged with being in a conspiracy to compel the plaintiffs to unionize their factory. The Supreme Court in Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815 (1908), sustained the right to maintain the action. In 1912 the Supreme Court refused a writ of certiorari, and in 235 U. S. 522, 35 Sup. Ct. 1170, 59 L. Ed. 341 (1915), that court, affirming the decision of this court in 209 Fed. 721, 126 C. C. A. 445 (1913), sustained a judgment rendered against the defendants in that action in the sum of $353,130.90.

When the action above referred to, known as the Danbury Hatter's Case, was commenced, a writ of attachment was issued dated August 31, 1903, demanding $240,000 damages and costs. The writ directed the United States marshal for the district of Connecticut to attach to the value of $250,000 the goods and estate of over 150 named defendants, and it was duly served upon them and upon the Savings Bank of Danbury, defendant herein, "as agent, trustee, and debtor of and to each of the aforesaid persons named therein as defendants."

The process under which the money deposited in the Savings Bank was attached was issued under section 880 of the General Statutes of Connecticut, Revision of 1902, which reads as follows:

"When the effects of the defendant in any civil action in which a judgment or decree for the payment of money may be rendered, are concealed in the hands of his agent or trustee so that they cannot be found or attached, or where a debt is due from any person to such defendant, or where any debt, legacy, distributive share, is or may become due to such defendant from the estate of any deceased person or insolvent debtor, the plaintiff may insert in his writ a direction to the officer to leave a true and attested copy thereof and of the accompanying complaint, at least twelve days before the session of the court to which it is returnable, with such agent, trustee, or debtor of the defendant, or, as the case may be, with the executor, administrator, or trustee of such estate, or at the usual place of abode of such garnishee: and from the time of leaving such copy, all the effects of the defendant in the hands of any such garnishee, and any debt due from any such garnishee to the defendant, and any debt, legacy, or distributive share, due or that may become due to him from such executor, administrator, or trustee in insolvency, not exempt from execution, shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover."

When the judgment was obtained in the main action, an execution was taken out and put into the hands of the marshal, who, acting by the direction of the plaintiffs, made demand upon the Savings Bank of Danbury, the defendant herein, as agent, trustee, and debtor of and to each of the judgment debtors severally of the sums named in the execution and of any estate of each of the several judgment debtors severally. This demand the Savings Bank refused to comply with, although at the time it was served it was indebted to each of the defendants severally in various amounts which it refused at the time to disclose. At the time the marshal made his demand, the Savings

Bank had on deposit $18,461.54 to the credit of various of the defendants. The execution was returned wholly unsatisfied.

An action in scire facias was then brought pursuant to section 931 of the General Statutes of Connecticut, Revision of 1902, to recover attached Savings Bank accounts levied upon by the writ of attachment above mentioned. Section 931 reads as follows:

"If judgment be rendered in favor of the plaintiff in any action by foreign attachment, all the effects in the hands of the garnishee at the time of the attachment, or debts then due from him to the defendant, and any debt, legacy, or distributive share, due or to become due to the defendant from any garnishee as an executor, administrator, or trustee, shall be liable for the payment of such judgment; and the plaintiff, on praying out an execution, may direct the officer serving the same to make demand of such garnishee for the effects of the defendant in his hands, and for the payment of any debt due to the defendant, and such garnishee shall pay said debt or produce said effects, to be taken and applied on said execution; and if he shall have, in any manner, disposed of the effects of the principal in his hands when the copy of the writ was left with him, or shall not expose and subject them to be taken on the execution, or shall not pay to the officer, when demanded, the debt due to the defendant at the time the copy of the writ was left with him, such garnishee shall be liable to satisfy such judgment out of his own estate, as his proper debt, if the effects, or debt, be of sufficient value or amount; if not, then to the value of such effects, or to the amount of such debt. A scire facias may be taken out from the clerk of the court where the judgment was rendered, to be served upon such [court] garnishee, requiring him to appear before such court and show cause, if any he have, to the contrary; and the plaintiff may require the defendant, and the defendant shall have the right, to disclose, on oath, whether he has any of the effects of the debtor in his hands, or is indebted to him; and the parties may introduce any other proper testimony respecting such facts. If it be found that the defendant has the effects of such debtor in his hands, or is indebted to him, or if he makes default of appearance, or refuses to disclose on oath, judgment shall be rendered against him, as for his own debt, to be paid out of his own estate with costs; but if it appear on the trial that the effects are of less value, or the debt of less amount than the judgment recovered against the debtor, judgment shall be rendered to the value of the goods, or to the amount of the debt; and if it appear that the defendant has no effects of such debtor in his hands, or is not indebted to him, he shall recover costs."

And Congress in 1872 provided as follows:

"In common-law causes in the Circuit and District Courts * * * the plaintiff shall be entitled to similar remedies, by attachment or other process against the property of the defendant, which are now provided by the laws of the state in which such court is held" for the courts thereof; "and such circuit or district courts may, from time to time, by general rules, adopt such state laws as may be in force in the" states where they are held "in relation to attachments and other process: * * * Provided, that similar preliminary affidavits or proofs, and similar security as required by such" state "laws, shall be first furnished by the party seeking such attachment or other remedy." Act June 1, 1872, c. 255, § 6, 17 Stat. 197.

No question has been raised but that the action is one which the plaintiff is entitled to bring under the laws of Connecticut and of the United States.

It appears that in December, 1903, after the attachment of the deposits in the Savings Bank and before the rendition of final judgment in the original action, the defendants in that action assigned to the United Hatters of North America, a voluntary association having

an office or principal place of business in the city and state of New York, the dividends or interest accruing on said deposits and which were declared after the attachment.

The United Hatters of North America was given notice of the pendency of the proceeding according to the terms of the Connecticut statute under which the proceeding was instituted, and it appeared and filed an answer in which it alleged that the dividends or interest accruing and declared subsequent to the original attachment were not held by the attachment but passed to it and became its property by virtue of the assignments. The United Hatters notified the Savings Bank that it claimed to own the dividends declared or the interest due on such accounts and demanded payment of the same which payment was refused.

It is admitted that at the time of the attachment the amount held in the Savings Bank account to the credit of the various defendants in the original action amounted to $18,461.54. And the District Judge has found that subsequent to the commencement of the present proceeding the defendant with the consent of the United Hatters paid to the plaintiff $17,558.37, on June 26, 1915, and the further sum of $474.65 on account of the principal of said deposits.

The important question involved is whether the interest or dividends which have accumulated in the hands of the defendant, and which would belong to the depositors but for the assignment, belong to the judgment creditor by virtue of the original attachment, or to the assignee of the fund by virtue of the assignment made after the attachment.

It is understood that similar actions are pending, brought by the plaintiff against other savings banks in Connecticut, involving the same issue, and that the parties have stipulated that the judgment in those actions is to be controlled by the decision in this suit. The accumulated dividends on the various deposits in the various actions are said to amount to about $20,000.

The District Judge came to the conclusion that the attaching creditor was not entitled to the interest or dividends, but that the same belonged to the United Hatters as assignee. He accordingly gave judgment to the plaintiff in the sum of $428.52; that being the amount of the principal which it is admitted remained unpaid in the hands of the Savings Bank of Danbury, the defendant in the action.

The attachment of deposits in a savings bank is a proceeding unknown to the common law. In Haber v. Nassitts, 12 Fla. 589, 608, the Supreme Court of Florida declares that:

"No such process was known at common law, and the proceeding is traced to a custom of London whereby, 'if a plaint was affirmed and returned nihil,' the plaintiff had a garnishment against debtors of the defendant, and after certain proceedings was entitled to judgment."

However that may be, the remedy by attachment in this country owes its existence entirely to statutory enactment. In Penoyar v. Kelsey, 150 N. Y. 77, 44 N. E. 788, 34 L. R. A. 248 (1896) the New York Court of Appeals in speaking of the remedy by attachment says:

"It exists, as a provisional remedy, only when authorized by statute, and, as such, is comparatively recent in its origin."

And see Gause v. Cone, 73 Tex. 241, 11 S. W. 162 (1889); Hubbell v. Kingman, 52 Conn. 19 (1884); Kittredge v. Bellows, 7 N. H. 399; Baldwin v. Flagg, 43 N. J. Law, 495. But in Mack v. Parks, 74 Mass. (8 Gray) 517, 69 Am. Dec. 267 (1858), the court said:

"Our system of attachment on mesne process was derived from the ancient rule of the common law, by which, as part of the service of civil process, goods which were properly subject to distress were allowed also to be taken by a species of distress, and held as vadii or pledges to compel the appearance of the defendant."

[1] As the remedy by attachment is statutory, the rights of an attaching creditor are governed by the state law as declared by the highest court of the state enacting the statute, and the decisions of that court will be followed by a court of the United States having jurisdiction of the proceedings. Wolf v. Cook (C. C.) 40 Fed. 432 (1889); Rice v. Alder-Goldman Commission Co., 71 Fed. 151, 18 C. C. A. 15 (1895); L. Bucki & Son Lumber Co. v. Fidelity & Deposit Company of Maryland, 109 Fed. 393, 48 C. C. A. 436 (1901).

And as the remedy by attachment is regarded as being in derogation of the common law, the courts have sometimes construed strictly the statutes giving the remedy. Ritchie v. Sayers (C. C.) 100 Fed. 520; Brigham v. Avery, 48 Vt. 602; Penoyar v. Kelsey, supra. But in a number of the states the statutes themselves expressly provide that they are not to be strictly construed. See C. J. 37. In other states the courts, having regard to the intention of the Legislatures, have been inclined to adopt a liberal construction independently of express statutory provision. Hannibal, etc., R. Co. v. Crane, 102 Ill. 249, 40 Am. Rep. 581; Gunby v. Porter, 80 Md. 402, 31 Atl. 324; Best v. British, etc., Co., 128 N. C. 351, 38 S. E. 923; Strock v. Little, 45 Pa. 416; Cole v. Utah Sugar Co., 35 Utah, 148, 99 Pac. 681. The Connecticut statute, once construed strictly (Hubbell v. Kingman, supra), is now liberally construed (Ransom v. Bidwell, 89 Conn. 137, 93 Atl. 134 [1915]). The policy of the state of Connecticut is declared by its highest court in the case last cited to be that:

"All the property of a debtor not exempt from execution shall be made subject to the payment of his debts, and that every facility consistent with the reasonable immunity of the debtor should be afforded to subject such property to legal process."

[2] Under such statutes as that in Connecticut, it is, of course, not questioned but that a creditor of a depositor in a savings bank can attach the deposit. A bank is bound to respect such process, and the courts do not permit it to apply the fund attached to the payment of any debt due from the depositor to any one. Bolles on Modern Law of Banking, vol. 2, p. 778. The difficulty arises when the fund so deposited is upon interest and it becomes necessary to determine whether the attachment binds interest thereafter accruing. The District Judge thought it did not. He fully recognized the principle that the question should be governed by the decisions of the Connecticut court so far as those decisions throw light upon the

subject. He reviewed at some length the decisions in that state. There are a number of cases in which the Connecticut court has decided that attaching creditors acquire no more or greater rights than the depositors had at the time of the attachments, and he therefore concluded that all interest accruing after the attachment belonged to the assignee by virtue of the assignment and not to the attaching creditors.

But the exact question presented in this action has never been presented to the Supreme Court of the state of Connecticut. That court has held that under the foreign attachment statute of that state there is no right to attach unless there is an existing obligation or debt due, and that where there is a condition precedent to the liability there is not an existing indebtedness which can be garnished. See Fitch v. Waite, 5 Conn. 117 (1823); Coburn v. City of Hartford, 38 Conn. 290 (1871); Holcomb v. Town of Winchester, 52 Conn. 447, 52 Am. Rep. 609 (1885); Sand Blast File Sharpening Co. v. Parsons, 54 Conn. 310, 7 Atl. 716 (1886); Cunningham Lumber Co. v. N. Y., N. H. & H. R. R. Co., 77 Conn. 628, 60 Atl. 107 (1905). These decisions, however, are not conclusive of the question involved in the present action. Not only is the question one upon which the Connecticut courts have not passed, but it is one upon which there seems to be little authority. While it is true that under the Connecticut decisions it is the existing obligation or the debt due which is bound by the attachment, and that at the time the attachment was served the dividends in question had not been declared and were not in existence, nevertheless they would be subject to the attachment if they are to be considered a necessary incident of the deposits. For whatever binds the principal binds that which is inseparable from the principal. An attachment of a freehold, for example, gives a lien on the timber trees and on the building attached thereto. In Coke on Littleton, 151b, it is said that a thing is "incident to another when it appertains to, or follows on that other which is more worthy or principal." The lexicographers say that an "incident" is a thing that is necessarily or inseparately connected with another. That it is something characteristically, naturally, or legally depending upon, connected with, or contained in another thing as its principal. Webster says that it is something necessarily appertaining to or depending on another, which is termed the principal. So that the question is whether the "dividends" on these deposits so appertained to and were so connected with the latter that the attachment of the deposits created a lien on the deposits and the dividends including those subsequently declared. In Shinn on Attachment and Garnishment (1896) vol. 1, § 316, pp. 609, 610, the writer says:

"Whether or not the rents and profits accruing upon the attached property are subject to the attachment lien cannot be said to be judicially ascertained."

In Cook on Corporations (7th Ed. 1913) vol. 2, § 484, p. 1359, that writer says that:

"Dividends on the stock which is attached follow the stock and are covered by the attachment."

236 F.—29

In Jacobus v. Monongahela National Bank (C. C.) 35 Fed. 395 (1888), a case in a United States District Court, a creditor attached shares of stock in a railroad company, the shares standing in the name of Jacobus, and, when the railroad company and Jacobus were summoned as garnishees, Jacobus pleaded nulla bona and the railroad company pleaded that the stock belonged to Jacobus. The original case was decided in 1883 by the Supreme Court of the United States (109 U. S. 275, 3 Sup. Ct. 219, 27 L. Ed. 935) in favor of the gar-nishees. It appears that, at the time the attachment was served, the railroad company had in its hands a dividend of $264 on said stock, and from time to time thereafter 21 other dividends of $264 each were declared and all said dividends were retained by said railroad company until the decision by the Supreme Court, when the railroad company paid the money to Jacobus without interest. Suit was then brought on the recognizance furnished by the bank to pay damages caused by the attachment, and the question arose as to whether the attachment compelled the railroad company to withhold the payment of subsequent dividends. The court held that the attaching creditor was entitled to the dividends and said:

"The dividends were but an incident to the stock—the mere fruits thereof —and were as much within the grasp of the attachment as the corpus of the stock was."

In Moore v. Gennett, 2 Tenn. Ch. 375 (1875), Chancellor Cooper in an attachment case said that:

"Dividends are as much an incident to the stock as rent is to the reversion of land, or interest to a debt."

He added:

"Besides, the increase or income of property, after the levy of an attachment, is given to the creditor by Code, § 3536."

The connection clearly shows that in his opinion the provision of the Code was merely declaratory of what the law would have been without the Code.

In Syracuse City Bank v. Coville, 19 How. Prac. (N. Y.) 385 (1860), the court held that, where an attachment issued and was levied on a money bond payable in installments and at the time only one installment was due, the creditor only acquired a lien on the amount actually due upon the bond at the time of service of the writ. The case is distinguishable from the case of Jacobus v. Monongahela National Bank, supra, and is not to be regarded as controverting it in the least. What was attached in the Syracuse City Bank Case was the debt due at the time of the levy. The debts due on the subsequent installments were not incidents of the debt attached, but were wholly independent thereof.

In the case under consideration the property attached was not stock, but deposits in the Savings Bank. Now a savings bank is conducted solely for the benefit of its depositors. It receives deposits and loans them for their benefit; and a savings bank, which is conducted solely for the benefit of the depositors and in which the profits after deducting necessary expenses inure wholly to the benefit of the depositors,

does not stand in the relation of a debtor to a creditor as does an ordinary bank to its depositors. Its relation is more nearly that of trustee and cestui que trust. State v. People's National Bank, 75 N. H. 27, 70 Atl. 542, 21 Ann. Cas. 1204. The depositors intrust their money to the bank as their trustee to keep and invest the same according to the charter and the laws. If there is a profit, they receive it; if there is a loss, they share it according to the amount of their deposits. In Cary v. Savings Union, 22 Wall. 38, 28 L. Ed. 779 (1874), the Supreme Court held that the share of profits paid by a savings bank to its depositors constituted "dividends." Chief Justice Waite wrote the opinion, in the course of which he said:

> "The interest received for the loan of each deposit was not kept by itself, and paid to the depositors after deducting a charge to cover expenses, but all was placed in a common fund, and, when the net result of the business was ascertained, that was divided among the several contributors according to the value of their contributions. Such a division clearly produces a dividend according to the common understanding of that term."

The question in the case was whether the share of the profits paid a depositor was to be considered as "interest" or as "dividends." But that was a case where the Savings Bank had a capital stock and a reserve fund, and under its charter the directors at the expiration of every six months, after deducting certain salaries and expenses, would set apart a certain proportion of the profits, not exceeding one-tenth, to the stockholders as a compensation for furnishing the capital. "Although a bank may be called a savings bank, if it is really a stockholders' bank, where the capital is owned by the shareholders, the name will amount to nothing." 2 Morse on Banks, § 618. The mere designation of a bank as a savings bank does not make it one. To determine its true character, its organization, powers, and mode of doing business must be considered. 3 R. C. L. p. 694. And the record in this case does not disclose the organization, powers, and mode of doing business of the Danbury Savings Bank. We do not know whether it had a capital stock or not. If it did not have but held the deposits as a trustee and not as a debtor, the plaintiff could still attach them. The law is clear that, if a trustee has funds in his hands belonging to a cestui que trust, they are liable to foreign attachment. Easterly v. Kency, 36 Conn. 18 (1869). Whether the income funds so held produce "dividends" in a technical sense is not important to the decision of this case, such income being, in our opinion, an incident of the deposits in either case.

The matter may be considered from another viewpoint. In Mattingly v. Boyd, 20 How. 128, 15 L. Ed. 845 (1857), the Supreme Court said that:

> "As a general rule, a garnishee is not bound to pay interest, because he is liable to be called on to pay at all times. 11 Sargent & Rawle, 188; Drake, Pr. 725; 1 Washington V. R. 149."

Undoubtedly what the court referred to was not the interest due from a debtor to a creditor at the time of the service of the process, but interest on the money thereafter; and in that case, while acknowledging the general rule to be as stated, the garnishee was charged with

interest from the time when the attachment process was served for the reason that he had used the money, and interest was charged from October 23, 1827, when process was served to August 25, 1851.

In Woodruff v. Bacon, 35 Conn. 97 (1868), the Supreme Court of Connecticut applied the same principle to a case in which the garnishee had used the fund. The court said:

"But we cannot recognize the principle that should allow the plaintiffs to recover the debt and not allow them to recover the interest which is the mere incident to the debt arising from the defendant's use of it."

So in Cox v. Cronan, 82 Conn. 176, 72 Atl. 927, 135 Am. St. Rep. 268 (1909), the same court said:

"When money belonging to a defendant is attached in the hands of a third party by process of foreign attachment, the garnishee cannot safely pay it over to either party pending the continuance of the suit in which it is attached, but must hold it to abide the result of the action. If he is not under contract to pay interest and makes no use of the money, but retains it as a mere stakeholder, he will not be liable for interest until the result of the suit determines to which party he shall pay it. Candee v. Skinner, 40 Conn. 464; Phœnix Ins. Co. v. Carey, 80 Conn. 426, 432, 68 Atl. 993. But when he mingles the money attached with his own and has the use of it, he is liable for the interest on it."

In American & English Encyclopedia of Law, 837, 838, the rule is laid down as follows:

"It is well settled that a garnishee is liable to the plaintiff for interest on the amount of his indebtedness to the defendant during the pending of the garnishment proceedings if he had promised the defendant to pay interest or if he received interest or used the money during that time."

In 22 Cyc. 1559, 1560, the rule is stated as follows:

"Attachment or Garnishment.—(1) In General. Where interest upon a debt is recoverable as damages, and not by reason of a contract to pay it, the debtor is not usually liable for interest during a period in which he is prevented from making payment by reason of the debt being attached or garnished in his hand by some third person, or by the debtor being summoned as a trustee of the creditor under trustee process. But if the contract on which the debt is founded draws interest during the time payment is thus delayed interest will not be suspended. If a debtor against whom trustee or garnishment proceedings are issued causes unreasonable delay in making his answer thereto or otherwise for the purpose of obtaining a longer use of the money, or falsely denies his indebtedness, he will be liable for interest during the pendency of the proceedings. (2) Use of Funds by Garnishee. If a garnishee, during the pendency of the proceedings, employs the funds in his hands so as to derive a profit therefrom, he will generally be held to account for interest."

In Bassett v. Kinney, 24 Conn. 267, 63 Am. Dec. 161 (1855), the court held that a person to whom money is intrusted to be paid over to a designated recipient, and who deposits the money in bank for some time, afterward paying it over to the person entitled to receive it, is liable to such person for the interest paid to him, on the money while deposited in the bank, although such interest is paid after the money has been turned over. Where it affirmatively appears that the funds have been profitably employed and the principal has been augmented by virtue of such profitable employment, the principal and the increment are inseparable and belong to the attaching creditor. If

the attached fund, in this case the deposits, produces earnings during the period of the attachment, those earnings are an incident of the attached fund and subject to the lien. It makes no difference by what name the earnings may be called, whether interest or dividends. As long as the attached fund is used for profit, the profit, whether earned for the benefit of the garnishee or the debtor, is impounded for the benefit of the attaching creditor and is subject to the same ultimate disposition as the principal of which it is the incident. Is it said that in this case the Savings Bank was not using the funds for its own benefit but for the benefit of the depositors? But surely that cannot help the case, for if the argument be sound then this extraordinary result would follow: That a person garnisheed could not use the attached funds for his own benefit without being chargeable with interest, but he could use them for the benefit of the debtor defendant who is being pursued by the attaching creditor and if he did the defendant and not the attaching creditor would be entitled to the accumulated interest. A principle leading to such an unjust and irrational result cannot be sound and need not be further considered.

That the deposits attached were used and earned a profit during the period of litigation is conceded. The court below made the following finding of fact which was embodied in the judgment:

"That since that attachment, the defendant herein has, in accordance with the terms of its charter, used and improved the moneys so deposited with it and has regularly declared dividends upon said several deposits payable from the income and profits earned by the defendant from these and its other deposits, and that the aggregate amount of dividends so declared upon the several deposits, levied upon by said writ of attachment, is $11,278.13."

The plaintiff contends that he is entitled to recover 6 per cent. interest from the date of the demand made by the marshal after final judgment on December 24, 1912. The General Statutes of Connecticut, Revision of 1902, section 3440, provide that the net income of savings banks in excess of one-eighth of 1 per cent. of its deposits, actually earned during the six months last preceding, and no more, may be semiannually divided among its depositors. It is then added that no dividend shall exceed a rate of 4 per cent. per annum except as provided in section 3441. The plaintiff's claim to 6 per cent. does not rest upon anything in that section, but upon the principle that the refusal to comply with the marshal's demand was wrongful, and, when one wrongfully withholds moneys, he is chargeable with the legal rate of interest, which in Connecticut is 6 per cent. At the time the marshal made his demand, the interest or dividends were claimed by the United Hatters of North America under the assignment, and the proceeding now under review was instituted to determine the rights of the respective parties. A withholding by the defendant under such circumstances cannot be regarded as unlawful, and the interest to be allowed must be limited to the savings bank rate.

The judgment below must be modified so as to include the dividends declared by the defendant according to law. Those dividends the plaintiff is entitled to recover in addition to the balance of the deposits $428.52, and his costs in both courts.

The judgment, so modified, is affirmed.