## UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION v. ATLANTIC CORPORATION.

(District Court, D. Massachusetts. May 4, 1925.)

No. 1805.

1. **Courts** ⊕➜359—Whether banks are chargeable with interest on checking accounts paid to depositor after service of trustee process is determined by local law.

Whether banks served with trustee process are chargeable with interest on checking account paid to depositor after service of writ must be determined, if possible, by local law.

2. **Banks and banking** ⊕➜119—Title to money in general deposit in commercial bank passes to bank, and bank's contract is to honor depositor's checks.

Title to money deposited in general deposit in commercial bank passes to bank, and relation of debtor and creditor is created; bank's contract being to honor depositor's checks so long as it has sufficient funds to do so.

3. **Banks and banking** ⊕➜153—Special deposit subject to depositor's check remains property of depositor.

Fund, deposited in bank for special purpose subject to depositor's check, remains property of depositor.

4. **Garnishment** ⊕➜115 — Bank served with trustee process held not liable for interest on checking account subsequently paid to depositor; "absolutely and without any contingency."

Where interest was paid on daily balances of checking accounts at rates subject to modification or termination at any time by bank, and dependent on whether depositor was borrower, interest was not part of original debt nor due "absolutely and without any contingency," within G. L. Mass. c. 246, § 32, and bank was not liable for interest paid to depositor after service of trustee process.

At Law. Action by the United States Shipping Board Emergency Fleet Corporation against the Atlantic Corporation. On plaintiff's motions to charge trustees under trustee process to extent of sum disclosed in answer, and interest accruing thereon, including interest subsequently paid to principal defendant. Motions denied.

Chas. P. Curtis, Jr., of Boston, Mass., for plaintiff.

Tyler, Tucker, Eames & Wright, and C. H. Tyler, all of Boston, Mass., for defendant.

BREWSTER, District Judge. By writ dated November 21, 1921, the United States Shipping- Board Emergency Fleet Corporation brought an action 'at law against the Atlantic Corporation, principal defendant, by trustee writ, in which the New England Trust Company of Boston and the National Union Bank of Boston were named as trustees, and on the same day service was duly made on each trustee.

The trustees filed answers, from which it appears that at the time of the service of the writ upon it, the New England Trust Company had in its hands and possession credits of the principal defendant amounting to $100,945.21, and that the National Union Bank had at the same time in its hands and possession credits to the amount of $10,847.-33. The credits in each case consisted of deposits subject to check made by the principal defendant in the commercial department of the respective banking institutions.

Subsequently, but prior to the filing of the plaintiff's motion, hereinafter referred to, the New England Trust Company paid to the principal defendant (the Atlantic Corporation) interest on the deposit disclosed in its answer amounting to $7,698.40, and the National Union Bank paid to the principal defendant, as interest on the deposit disclosed in its answer, the sum of $585.58.

Judgment for the plaintiff in the action at law is about to be entered considerably in excess of the amounts disclosed by the answers of the trustees, and before judgment the plaintiff has moved that each of the trustees be charged upon its answer to the extent of the sum disclosed therein, together with all interest accruing thereon, including the interest subsequently paid to the principal defendant.

The trustees, through their proper officers, submitted to examination, and, from evidence thus adduced, it appeared with respect to the deposit in the New England Trust Company that when the company was served with plaintiff's trustee writ, it noted the attachment on its books, and the amount then standing to the credit of the defendant was thereafter held subject to the trustee process and not subject to withdrawal by the defendant. The trust company had no special agreement with this depositor relative to the payment of interest on its deposit, but when the deposits were made the trust company was paying to all of its depositors interest at the rate of 3 per cent. per annum on daily balances of $500 and over subject to check. This rate of interest continued until July 1, 1922, when it was reduced to

2 per cent., and notice of the reduction was sent to all the depositors.

The president of the trust company testified that the principal defendant had been told that the deposit would bear interest at the regular current rate paid to all depositors, and that it was the practice of the trust company to continue to pay interest on attached funds when the depositor was not a borrower. It appeared further from the evidence that, in paying the subsequently accruing interest to the principal defendant, the bank pursued the custom prevailing among banks in Boston; that these payments were made from time to time during the period from November 21, 1921, to February 21, 1924, since which time the accrued interest had been paid to the plaintiff with the understanding that the payments should not prejudice any rights of the trustee respecting the interest theretofore paid to the principal defendant; that these payments to the defendant corporation were made with the knowledge of authorized representatives of the plaintiff whose duty it was to audit and approve payments made by and to the defendant corporation in connection with the work which the defendant had undertaken for the plaintiff. No objections were made to these payments, nor did either of the trustees receive any request from the plaintiff to hold the interest subject to the attachment.

With respect to the deposit in the National Union Bank, it appeared that the situation was identical with that of the New England Trust Company, except that the rate of interest during the whole period was 2 per cent. Neither of the trustees withdrew the deposit from its general banking funds or made any change with reference to it, other than to "earmark" the account so as to make sure that the amount would be reserved to answer the trustee process. Each of the trustees had, therefore, the use of the funds after the attachment to the same extent as it would have enjoyed if the amount had been allowed by the principal defendant to remain on deposit.

[1] It is on this state of facts that the plaintiff asks this court to charge each trustee with the funds in its hands at the time of the service of the trustee process, and also with the interest which had been paid over to the principal defendant. I take it to be beyond controversy that the question whether the trustees are to be charged with this interest must be determined, if possible, by the laws of Massachusetts. The plaintiff's claim is based largely on the authority

of Adams v. Cordis, 8 Pick. (Mass.) 260. In that case, the principal defendant was a banker, and the trustee owed him on an open account a sum of money which the court found to be an interest-bearing debt. The court there held that the trustee was chargeable not only for the principal of the debt, but the interest accruing thereon; the court drawing a distinction between interest given by way of damages for detention of the debt and interest which is a part of the obligation out of which the principal debt arose.

This important distinction has been followed in Massachusetts down to a comparatively recent time in several cases where the courts, following Prescott v. Parker, 4 Mass. 170, have refused to charge the trustee with subsequently accruing interest on the ground that the subsequently accruing interest was not a part of the debt itself. Norris v. Massachusetts Mut. L. Insurance Co., 131 Mass. 294; Bickford v. Rich, 105 Mass. 340; Smith v. Flanders, 129 Mass. 322.

My attention has not been called to any Massachusetts case where the rule in Adams v. Cordis, supra, has been applied in order to charge a trustee with interest, but in Savings Bank of Danbury v. Loewe, 242 U. S. 357, 37 S. Ct. 172, 61 L. Ed. 360, the Supreme Court of the United States followed Adams v. Cordis, supra, and charged the Savings Bank, summoned as garnishee under a Connecticut statute, with dividends accruing subsequent to the date of the attachment on deposits made by the principal defendants in the Savings Bank. I have found no case where a commercial bank or trust company disclosing, as trustee, deposits subject to check in the usual course of commercial banking, has been charged with interest accruing subsequent to the attachment.

The contention of the plaintiff is so opposed to the accepted practice of banks that it becomes a matter of some consequence to determine whether the rule in Adams v. Cordis, supra, should be extended to reach interest on deposits in commercial banks which have adopted the policy of paying interest on daily balances.

If the decision in Adams v. Cordis, supra, rested upon the fact that the trustee enjoyed the use of the money, it would inevitably follow from the facts appearing in the case at bar that the trustees would be chargeable with the interest; but the Massachusetts cases leave one somewhat in doubt as to whether the use of the funds should be accepted as a ground for charging the trustee with interest.

In Oriental Bank v. Tremont Ins. Co., 4 Metc. 1, 10, we find the Massachusetts Supreme Court using this language:

"We are aware that in the case of Adams v. Cordis, the fact that the defendant used the money, for which he was chargeable as trustee, in common with his other funds, during the pendency of the process, was mentioned as a reason why the plaintiff should recover interest. But without deciding, in this case, how far the use of the money may be a ground for charging trustees with interest, we think the main reason, upon which the decision in that case rests, is that the debt was one drawing interest, and that the payment of accruing interest was as much a part of the contract, as the payment of the principal."

The language employed by Chief Justice Parker in Adams v. Cordis, supra, and Mr. Justice Holmes in Savings Bank of Danbury v. Loewe, supra, strongly indicates that the real ground upon which rests the right to charge trustees with interest is the fact that the interest is a constituent part of the debt, and inseparable from it. Thus, in Adams v. Cordis, supra, we find this language:

"The interest is the debt as much as the principal," and again:

"The case before us is, in regard to interest, the same as if a promissory note had been given for the balance upon interest; for the defendant states that an interest account was kept, and if he had settled with Williams, he should have paid interest; *it was therefore included in and a part of the contract.*" (Italics mine.)

In Savings Bank of Danbury v. Loewe, supra, we find this language:

"It was admitted at the argument that in the case of an interest-bearing debt the subsequently accruing interest was held as well as the principal. The obligation to pay the one stands on the same footing as the obligation to pay the other; the two are one, *they are limbs of the same contract, and there is no reason for splitting them up.*"

In the same case, when before the Circuit Court of Appeals for the Second Circuit (Loewe v. Savings Bank of Danbury, 236 F. 444, 149 C. C. A. 496, L. R. A. 1917B, 938), Judge Rogers says: "Whatever binds the principal binds that which is inseparable from the principal."

Thus we find the courts, in the leading cases relied upon by the plaintiff, very much in accord on the proposition that the trustee is chargeable with interest subsequently accruing, because the interest equally with the principal is the debt owing to the principal defendant. This is the view taken by this

court in the case of Greenish v. Standard Sugar Refinery, 2 Lowell, 553, Fed. Cas. No. 5,776, where Judge Lowell states that, "In Massachusetts, the rule appears to be, that, if the garnishee owes a debt which by its terms bears interest, he will be bound to pay it, as an incident to the principal, though his power of paying was suspended by the misfortune of an attachment."

If this reason for the rule is adopted as the controlling one, the Massachusetts statute (G. L. c. 246, § 32), which provides that no person shall be adjudged a trustee by reason of money due from him to the defendant unless it is, at the time of the service of the writ upon him, due absolutely and without any contingency, would appear to have a significant bearing upon the question under consideration. This statute has been considered by the Massachusetts Supreme Judicial Court in several cases. In the recent case of Krogman v. Rice Bros. Co., 241 Mass. 295, 300, 135 N. E. 161, 164, Mr. Justice Jenney states these propositions as settled in Massachusetts:

"Money cannot be attached by trustee process unless when service is made on the trustee it is due absolutely and without any contingency except that of time. * * * It is immaterial that there may eventually be something due from the trustee to the defendant or that it is probable that some amount may become payable. The trustee is chargeable only upon the facts existing when the writ was served on it."

With these propositions in mind, it becomes necessary to survey the situation presented by the trustees' answers and the facts developed at the hearing with a view of determining: (1) Whether the interest was a part of the principal debt and inseparable from it; and (2) if not a part of the original debt, whether it was due absolutely and without any contingency.

The result in Savings Bank of Danbury v. Loewe, supra, does not settle these questions, because in that case the deposits attached were in a savings bank, and, as was pointed out by the Circuit Court of Appeals (236 F. 444, 149 C. C. A. 496, L. R. A. 1917B, 938) a savings bank is conducted solely for the benefit of its depositors, the profits inure wholly to their benefit, and, for that reason, as Judge Rogers states, a savings bank "does not stand in the relation of a debtor to a creditor as does an ordinary bank to its depositors."

[2] The obligation of a commercial bank to its depositors is well settled and springs from the relationship of the parties. In the case of a general deposit the title to the money so deposited passes from the depositor to the bank, and the relation of debtor and creditor is created; the bank becoming the debtor to the depositor. National Bank v. Millard, 10 Wall. 152, 19 L. Ed. 897; In re Interborough Consolidated Corporation, Bkt. (C. C. A.) 288 F. 334, 32 A. L. R. 932. Its contract is to honor the checks of the depositor so long as it has sufficient funds with which to do so. Castalian v. National City Bank of Chelsea, 244 Mass. 416, 138 N. E. 398, 26 A. L. R. 1484.

[3] If a fund is deposited in a bank for a specific purpose but subject to the depositor's check, it remains the property of the depositor. Continental & Commercial Trust & Savings Bank v. Chicago Title & Trust Co., 229 U. S. 435, 33 S. Ct. 829, 57 L. Ed. 1268; In re Interborough Consolidated Corporation, Bkt., supra.

[4] In neither case does the deposit create a trust relationship imposing upon the bank the duty as fiduciary to add to the funds. If the bank is under any obligations at all to pay interest on the deposit, it is because, in order to attract depositors, it has adopted a certain policy relating to the conduct of its business. The obligation thus arising differs essentially from an obligation arising under an interest-bearing contract, such as a promissory note written with interest. Here the interest together with the principal will become due and payable without any contingency whatsoever. The maker cannot, by his own acts, relieve himself of his obligation to pay interest any more than he can defeat the holder's right to the principal. But the obligation of a commercial bank to pay interest is of a different character. The obligation may not be coeval with the obligation to pay over the principal. It may be modified or even terminated, at the will of the bank, and after notice of such modification or termination the depositor's rights to interest are affected to a corresponding degree. He cannot assert rights to more. Thus at all times there exists a contingency that the bank will reduce the amount of interest or will elect to pay no interest at all.

It appeared that a depositor's right to interest on trustee funds depended upon whether the depositor was a borrower or not, and that it was the prevailing custom among banks to pay over interest, accruing subsequent to the attachment, to the principal defendant.

In the absence of any expressed agreement with the depositor relative to the payment of

interest, it would seem that his rights to interest must rest upon the practice and usages of the bank in its dealings with depositors, and, that being so, it would follow as a necessary consequence that these rights must be subject to all the limitations of this practice and usage.

The foregoing leads me to the conclusion that interest which a commercial bank elects to pay on deposits is neither a part of the original debt nor is it due absolutely and without any contingency.

But it may be urged that the money, so far as represented by the deposit, is money due absolutely and without any contingency for which the trustee must be held to answer, and that it is immaterial that the element of uncertainty or contingency may exist respecting interest subsequently accruing thereon. This would be a sound contention if the obligation to pay the deposit and the obligation to pay interest arose from the same contract, express or implied; or, to state it differently, if the obligations were deemed to be part of one and the same debt. But it has already been pointed out that the obligation to pay the principal and the obligation to pay interest are not identical. The obligation to pay the one does not stand on the same footing as the obligation to pay the other. We are not now dealing with a case where the interest can be said to be inseparable from the principal. The object of the attachment "is a right, regarded as a thing within reach of the process because of the power of the court over the person subject to the corresponding obligation. * * * If the right is vested the attachment reaches the whole of it. * * *" Holmes, J., in Savings Bank of Danbury v. Loewe, supra.

Under the Massachusetts statute, if the right is subject to any contingency, it cannot be reached. In the case at bar, the right of the principal defendant in the debt represented by the deposit was vested and free from any contingency, but its right to the interest was neither vested nor free from contingency at the time of the service of plaintiff's writ. Its rights respecting interest were more nearly analogous to a stockholder's rights to subsequently declared dividends which, apart from statute, a trustee process would not reach. Savings Bank of Danbury v. Loewe, supra; Bowman v. Breyfogle, 145 Ky. 443, 140 S. W. 694, Ann. Cas. 1914B, 938; 28 C. J. p. 170, § 215.

The question is a very close one, but when we consider that the intent and purpose of a trustee process is to enable an attaching plaintiff to reach, as security for his judgment, credits in the hands of a person other than the defendant, it would involve some play of the imagination to hold that the New England Trust Company had in its hands and possession, as a credit belonging to the defendant at the time of the attachment, $7,698.40, because it elected to pay that amount for the subsequent use of the deposit, when at the time of the attachment the principal defendant could not have asserted any rights to interest if the bank had elected not to pay interest on deposits, and when, the rate was then uncertain and subject to change.

In view of the results which I have reached and have above indicated, it becomes unnecessary to determine whether the conduct of the plaintiff, in acquiescing in the payments to the principal defendant, would be sufficient to estop it from now asserting a claim to the interest thus paid with its knowledge and apparent consent.

I understand the trustees have paid over to the plaintiff the principal sum disclosed in their respective answers, and therefore, if they are not to be charged with interest, there would seem to be no occasion for further action on the part of the court. With that understanding, and for that reason, plaintiff's motions will be denied.