Las Monjas Racing Corporation, peticionaria, *v.* Corte de Distrito de San Juan, Hon. T. Torres Pérez, Juez Interino, demandada.

Núm. 1164.—*Sometido:* Febrero 6, 1939. *Resuelto:* Marzo 7, 1939.

Nota: Véase el prefacio.

*L. Feliú, Celestino Iriarte* y *F. Fernández Cuyar,* abogados de la peticionaria; *Dubón & Ochoteco,* abogados del interventor J. Pedrosa, demandado en el pleito principal; *Diego O. Marrero,* abogado de la Comisión Hípica.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

En un recurso iniciado contra seis demandados, Las Monjas Racing Corporation trató de recobrar la suma de $65,000 en concepto de daños y perjuicios, más las costas, gastos, desembolsos y honorarios de abogado. En la súplica la responsabilidad mancomunada y solidaria de dos de estos demandados, Juan Pedrosa y Jorge Romany—fuera de la cuestión de costas, gastos, desembolsos, y honorarios de abogado—se limitaba a $30,000.

La demandante solicitó el embargo de bienes hasta la suma de $5,000 tan sólo para asegurar *pro tanto* la efectividad de cualquier sentencia que pudiera obtenerse en el pleito de los $65,000; y ofreció prestar fianza por la suma que fijara la corte. La corte de distrito ordenó al secretario que librara el mandamiento de embargo solicitado al prestarse una fianza pór $5,000.

El demandado Juan Pedrosa, dueño de doce caballos que fueron embargados, prestó una fianza y solicitó se le entregara la custodia de los caballos. La fianza era por $5,000 y se decía haber sido fijada por la corte en armonía con el valor de la propiedad embargada. En su moción Pedrosa invocaba las disposiciones de la sección 15 de la Ley para asegurar la efectividad de sentencias; mas la fianza por el valor de los bienes embargados estaba sujeta a la condición de que Pedrosa dejara de devolver dichos bienes con los frutos que los mismos produjeran, al ser requerido de acuerdo con las disposiciones de las secciones 10 y 11 de la referida ley. Uno de los letrados de la demandante hizo constar en esta fianza su conformidad con el depósito solicitado, bajo las prevenciones y responsabilidades de ley, siempre que a la demandante se le concediera un término de cinco días a partir de la fecha en que se entregaran los bienes embargados al depositario Pedrosa, para examinar la suficiencia de la fianza y la solvencia de los fiadores.

La corte de distrito entonces aprobó la fianza prestada para garantizar el valor de los bienes embargados, ordenó la entrega de éstos a Pedrosa y concedió a la demandante cinco días para impugnar la suficiencia de la fianza. Esta orden está fechada enero 4 de 1939. El márshal, luego de entregar los caballos a Pedrosa, hizo constar en su diligenciamiento el valor de cada caballo. Este valor estimado fluctuaba entre doscientos y setecientos dólares y ascendía en total a $5,000.

Pedrosa entonces solicitó, a tenor de la sección 15, el levantamiento del embargo previa prestación de otra fianza por

$5,000. Esta moción fué notificada al letrado de la deman-dante y se señaló el día 9 de enero para la vista. A moción de la demandante, la corte ordenó a los fiadores que figura-ban en la fianza anterior que comparecieran el 9 de enero para que justificaran su solvencia. En una orden comple-mentaria fechada el 6 de enero, la corte hizo constar clara-mente que mientras estuviera pendiente la moción de Pedrosa solicitando el levantamiento del embargo, los caballos per-manecerían en *custodia legis* y que no podría disponerse de ellos en forma alguna contraria a derecho o ser inscritos o corridos en ningún hipódromo de la Isla sin previa autori-zación de la corte; y dispuso que la misma fuese notificada a Pedrosa y a la Comisión Hípica Insular. Mediante una orden fechada el 7 de enero la corte autorizó que se corrie-ran los caballos en los hipódromos de Puerto Rico. Esta orden fué dictada en presencia de los letrados luego de cele-brarse una vista y de prestarse otra fianza por $5,000, a tenor de las secciones 10 y 11 de la ley. La fianza respondía en caso de que, al ser requerido para ello, Pedrosa dejara de devolver los bienes embargados, con los frutos que los mis-mos produjeran. Respondía además de cualesquiera daños y perjuicios que los caballos sufrieran con motivo de su par-ticipación en cualquier carrera de caballos en los hipódromos de Puerto Rico o en caso de que los mismos fueran recla-mados al participar en dichas carreras. Mediante una orden fechada el 9 de enero la corte explicó que su orden de 7 del mismo mes incluía las carreras llamadas de reclamo y que la fianza prestada comprendía la obligación de satisfacer el valor de cualquiera de esos caballos que saliera de la pose-sión del demandado al correr en carreras de reclamo. En enero 17 la corte dictó una resolución al efecto de que el afianzamiento debía ser hasta la cantidad de $5,000 para res-ponder de la posesión en custodia legal que tenía el deman-dado Pedrosa de los bienes embargados, los que continuarían así embargados hasta que se resolviera el asunto en defini-tiva; pero que para obtener el levantamiento del embargo de

conformidad con la sección 15 de la ley, sería necesario prestar una fianza por la suma reclamada por la demandante—es decir, por $30,000 más una suma adicional razonable para costas, gastos, intereses y honorarios de abogado. El 18 de enero la corte declaró sin lugar una moción de reconsideración y concedió a Pedrosa un término de 24 horas para prestar su fianza de acuerdo con la resolución dictada por la corte el día anterior. La demandante entonces solicitó se dejaran sin efecto las órdenes de enero 4 y 7. En resolución fechada el 26 del mismo mes la corte revisó y discutió extensamente sus órdenes anteriores y, sin dictar una resolución específica, declaró sin lugar por inferencia la moción de la demandante. La teoría de esa moción fué: que la primera fianza se basó en la valoración dada a los bienes embargados por el márshal y por el depositario original, mas no en el valor material de los mismos, conforme exige la sección 10 de la Ley para asegurar la efectividad de sentencias; que dicha fianza no comprendía garantía alguna para los frutos producidos por dichos animales, a tenor de las disposiciones de la sección 11 de dicha ley y del Código Civil, ni para las costas; que la demandante no recibió notificación alguna de la moción presentada por la parte demandada solicitando se reconsiderara la orden de enero 17.

La peticionaria solicita se revisen y revoquen las órdenes de 4, 7, 17 y 26 de enero.

▇ Las secciones 9 y 10 de la Ley para asegurar la efectividad de sentencias, aprobada el 1 de marzo de 1902 (Comp. 5233–5250, Código de Enjuiciamiento Civil, edición de 1933, pág. 98) leen así:

"Artículo 9.—El embargo y prohibición de enajenar inmuebles se efectuarán anotándolos en el registro de la propiedad y notificándolos al demandado, con la prevención de que no podrá enajenar los bienes embargados sino en pública subasta, con citación del demandante, quedando el precio consignado a disposición del tribunal, ni enajenar en ningún caso los bienes en que haya recaído la prohibición. La enajenación de dichos bienes realizada en contravención

a lo dispuesto en este artículo se reputará fraudulenta para todos los efectos civiles y penales, y las personas responsables del fraude serán castigadas además como culpables de desacato (desobediencia).

"Artículo 10.—La prohibición de enajenar bienes muebles y el embargo de los mismos se practicarán depositando los bienes de que se trate en poder del tribunal o de la persona designada por éste, bajo la responsabilidad del demandante. Si el demandado diere fianza bastante a discreción del tribunal para responder del valor de dichos bienes, se depositarán en su poder, con la prevención y responsabilidades de la sección anterior. El dueño de bienes muebles embargados puede solicitar su enajenación en pública subasta con citación del demandante, a condición de que se consigne en la corte el precio de la venta. Los bienes fungibles cuyo embargo o prohibición de enajenarlos se haya decretado, se venderán en pública subasta a petición de cualquiera de las partes, consignándose el producto de su venta en la forma dispuesta por la corte."

Cualquier caballo inscrito en una carrera de reclamo, aparentemente puede convertirse en propiedad de otra persona distinta al dueño del mismo, que tenga otro caballo tomando parte en la misma carrera, al depositar el reclamante la suma especificada en cualquier momento antes de iniciarse la carrera. La orden de enero 7, en tanto en cuanto autoriza que se corran los caballos en carreras de reclamo, violaba las secciones 9 y 10 de la Ley para asegurar la efectividad de sentencias, y no puede ser sostenida.

■■ La sección 15 de la ley provee:

"El pago, consignación o afianzamiento de las sumas reclamadas al demandado, suspenderá el embargo decretado para seguridad de dichas sumas, o dejará sin efecto el embargo ya practicado."

La fianza que aquí se tuvo en mente fué un *"discharge or dissolution bond"*. La que tiene por mira la sección 10 es un *"forthcoming or delivery bond"* y no un *"dissolution bond"*. La segunda fianza prestada por Pedrosa era, al igual que la primera, un *"forthcoming or delivery bond"* y no un *"dissolution bond"*. El hecho de que él tratara mediante la prestación de tal fianza de obtener el levantamiento del embargo no alteró el alcance y efecto de la fianza pres-

tada por él y aprobada por la corte. El error, de haberlo, en la resolución de enero 17—al efecto de que Pedrosa no podía obtener el levantamiento del embargo mediante la radicación de una finza de $5,000, sino que para lograrlo era menester que prestara una fianza de $30,000 más una suma razonable para garantizar las costas, desembolsos y honorarios de abogado—no fué perjudicial a la peticionaria. Esa resolución, correcta o incorrecta, estaba sustancialmente de acuerdo con la propia teoría de la peticionaria sobre el espíritu y alcance de la sección 15.

De acuerdo con los términos de la sección 14 de la ley—

"Todas las pretensiones que se dedujeren por cualquiera de las partes en el curso del juicio con relación al aseguramiento de sentencia, se sustanciarán en pieza separada, dándose traslado a la parte contraria, con citación para una comparecencia ante cualquiera de los jueces, en la cual se propondrán y practicarán las pruebas que cada una de las partes propusiere y fueren pertinentes . . ."

Cuando la peticionaria a través de su abogado hizo constar en la primera fianza prestada por Pedrosa su conformidad con el depósito de los bienes embargados bajo las prevenciones y responsabilidades de ley, ella renunció la citación y comparecencia exigidas por la sección 14. Las "prevenciones y responsabilidades" de referencia eran presuntivamente las "prevenciones y responsabilidades" indicadas en las secciones 9 y 10, supra. La peticionaria fué notificada de todas las mociones posteriores, con excepción de la radicada por Pedrosa solicitando la reconsideración de la orden de enero 17, que fué declarada sin lugar por la corte al día siguiente. Si esta moción era una de las "pretensiones" a que alude la sección 14, cualquier error cometido por la corte al declarar sin lugar inmediatamente dicha moción sin que la peticionaria fuera notificada, no fué perjudicial.

Dicha constancia, lógicamente interpretada, también equivalía a la renuncia de cualquier prueba preliminar formal que, de no existir, pudiera o no requerirse sobre el valor material

de los bienes embargados, no obstante la reserva que la peticionaria hizo de su derecho a "examinar la suficiencia de la fianza y la solvencia de los fiadores" dentro del término de cinco días contado a partir de la fecha en que se entregara la propiedad embargada al depositario Pedrosa. La moción posterior de la peticionaria para que se anulara la orden de enero 4 no atacaba la cuantía de la fianza con referencia al valor de la propiedad embargada. Atacaba tan sólo la solvencia de los fiadores y solicitaba que se requiriera a éstos para que justificaran su situación económica. El 9 de enero fué señalado para oírse esta moción, así como la de Pedrosa para que se levantara el embargo mediante la prestación de otra fianza por $5,000. Nada hay que demuestre que en esta vista la peticionaria insistiera en su moción para que se anulara la orden de enero 4 ó que aún llamara la atención de la corte hacia el hecho de que la moción había sido señalada para verse simultáneamente con la de Pedrosa. La inferencia es que la moción de la peticionaria, por lo menos temporalmente, fué abandonada. La peticionaria aparentemente no solicitó más tarde que los fiadores que firmaron la fianza original fueran nuevamente llamados para que justificaran su solvencia o que se señalara otro día para oírse su moción.

■■ Hemos mencionado el hecho de que la peticionaria en su moción posterior para que se anularan las órdenes de enero 4 y 7 hizo constar que la primera fianza por $5,000 se basó en la valoración de los bienes embargados dada por el márshal y por el depositario original y no en el valor material de los mismos; y que la fianza no garantizaba los frutos que produjeran dichos animales. La fianza, conforme hemos indicado, era por $5,000. Respondía en caso de que Pedrosa dejara de devolver los bienes embargados, con sus frutos. En su consecuencia la aseveración de que la fianza no garantizaba los frutos que produjeran los animales debe interpretarse en el sentido de que la obligación de pagar $5,000 al dejar Pedrosa de devolver los caballos con sus frutos, no ofrecía tal garantía.

El depositario original aparentemente era, si no una persona designada por el demandante, por lo menos la persona designada por la corte, "bajo la responsabilidad del demandante", según exige la sección 10, supra. La valoración dada a la propiedad por ese depositario y por el márshal de la corte, unida a la constancia puesta por la demandante en la fianza misma, bastaba para justificar que la corte llegara a la conclusión de que la propiedad embargada valía efectivamente $5,000. Cuando los caballos fueron entregados a Pedrosa, el márshal especificó el valor de cada uno de ellos. El estimado más bajo era $200 y el más alto $700. Es lógico asumir que estos estimados se basaron en el hecho de que los animales en cuestión eran caballos de carrera. Fuera del hecho de que los doce caballos fueron tasados en conjunto en la suma de $5,000, es decir, a un promedio de más de $400 cada uno, el juez de distrito no tenía razón alguna para suponer que el depositario original y el márshal habían valorado demasiado bajo los caballos, o desconocían su valor material o habían estimado su valor sin tomar en consideración el hecho de que se trataba de caballos de carrera, o sin determinar el valor de cada animal como caballo de carrera. Si la capacidad adquisitiva de estos caballos fué tomada en consideración al calcular su precio, por lo menos parte de los frutos que se obtuvieran al correrse estos caballos, fué incluído en su valor estimado. La orden de enero 4, en sus términos por lo menos, no autoriza que se corran los caballos. La orden complementaria de enero 6 prohibe expresamente que se corran los caballos sin autorización de la corte. La peticionaria no atacó la suficiencia de la fianza dentro de los cinco días concedidos para dicho fin, en cuanto a la cuantía de la obligación asumida por Pedrosa y sus fiadores. No incumbía al juez de distrito—de propia iniciativa, al anticipar una posible objeción y no obstante la aquiescencia escrita de la demandante a que se entregaran los caballos—exigir una fianza por más de $5,000 para incluir una suma por sobre el valor estimado de los caballos que fuera suficiente para

abarcar cualesquiera utilidades que se obtuvieran al ser corridos los caballos, estuvieran o no tales frutos incluídos en el valor estimado. De existir algún defecto en la fianza en lo que a su cuantía se refería, el mismo no vició la orden de enero 4, tal cual ésta fué explicada o enmendada por la orden complementaria del 6 del mismo mes.

■ El artículo 11 de la "Ley para Asegurar la Efectividad de Sentencias" lee así:

"Artículo 11.—Las disposiciones de la sección precedente son aplicables a los frutos que produzcan los bienes embargados o cuya enajenación se haya prohibido, si el embargo o prohibición fuere extensivo a dichos frutos."

En el texto castellano se usa la palabra "frutos" doquiera *"crops"* aparece en el texto inglés. Ni en la moción solicitando se dicte una orden de embargo, ni en la orden de la corte decretando se expida el correspondiente mandamiento, se hace mención de *"crops"* o "frutos". Ni el mandamiento ni el diligenciado del márshal están ante nos. Nada hay que demuestre que el "embargo o prohibición" en el presente caso incluyan *"crops"* o "frutos". A menos que los "frutos" que se obtengan en el futuro al correrse los caballos puedan considerarse como parte de los bienes embargados, o incidentales a los mismos, no puede resolverse que ellos están sujetos al gravamen del embargo. Los casos hasta aquí resueltos han tratado tan sólo con rentas y utilidades, dividendos de acciones e intereses, deudas y cuentas de ahorro. Véase 7 C. J. Secundum, *Attachment,* sec. 258, *Increase or Income from Property,* y casos allí citados, especialmente el de *Loewe* v. *Savings Bank,* 236 F. 444. Un caballo de carrera no produce utilidades automáticamente tal cual una cuenta de ahorro devenga intereses o acciones de corporaciones producen dividendos. Un caballo de carrera no puede salir victorioso en sus luchas al ser tenido en un establo o en la verde pradera. Mucho depende de la inteligencia, habilidad y eficiencia de cuadreros, *"trainers"* y jinetes de experiencia. Mucho más quizá depende de la cuidadosa supervisión, pers-

416

picacia mental y sano juicio del dueño. Toda vez que ambas fianzas proveían la devolución de los caballos y de los frutos producidos por éstos, no es menester que sigamos especulando en torno a estas cuestiones.

En vista de las anteriores conclusiones, las cuestiones envueltas en las varias mociones en que se solicita un auto de *supersedeas,* el restablecimiento del *statu quo* y que se castigue a Pedrosa y a los miembros de la Comisión Hípica Insular por un supuesto delito de desacato, resultan en gran parte, si no totalmente, académicas. No es necesario que las decidamos ni discutamos ahora.

*La orden de enero 7, en tanto en cuanto autoriza que se corran los caballos embargados en carreras de reclamo, debe ser revocada. Fuera de esto, el resultado en la corte de distrito no será alterado. Los autos elevados a virtud de los dos sucesivos recursos de* certiorari *deben ser devueltos a la corte de distrito.*